### G. W. BURKITT v. G. A. WYNNE ET AL.

Decided November 3, 1910.

**1.—Venue—Plea of Privilege—Breach of Contract.**

A sale of growing timber, with the right of ingress and egress for ten years for the purpose of cutting and removing the timber, is a sale of an interest in the land which can only pass by deed or grant, and therefore the venue of a suit for specific performance of such a contract of sale, or for damages for breach thereof, is the same as in a suit for specific performance of a contract to convey land.  Such a suit is an action *in personam* and must be brought in the county in which the defendant resides, if a plea of privilege is interposed.

**2.—Same.**

In an action against several defendants, in a county other than that of their residence, to enforce specific performance of a contract for the sale of standing timber, or for damages for breach of said contract, plea of privilege by said defendants and evidence pertaining to the same, considered and held that the court erred in overruling the plea.  Justice Reese, dissenting.

**3.—Executory Contract.**

A contract for the sale of timber, which shows upon its face that it does not convey the title to the timber but recites that a conveyance is to be made by the owner and that the purchase money is to be paid upon the execution and delivery of a conveyance, is an executory and not an executed contract.

**4.—Venue—Mistake of Law, Unavailing.**

The fact that a plaintiff, under a mistaken view of the law, honestly believed at the time of filing the suit that the facts upon which his action depended gave him a right to bring the suit in a county other than that of the defendant's residence, can not change the law nor deprive the defendant of his privilege to be sued in the county of his residence.

DISSENTING OPINION.

**5.—Breach of Contract—Damages—Specific Performance.**

In an action to enfroce specific performance of a contract for the conveyance of standing timber or in the alternative for damages for breach of said contract, pleading and evidence considered and held insufficient to entitle the plaintiff to recover on either count.

Appeal from the District Court of Walker County.  Tried below before Hon. S. W. Dean.

*Thos. B. Greenwood,* for appellant.—As showing that appellee Wynne is held to know the effect of applying the law to the facts on which he must rely for any recovery, and that he could not maintain the jurisdiction by merely averring legal conclusions or facts without foundation, see:  Groos v. Brewster, 55 S. W., 591, 592, 593; Hillard v. Wilson, 76 Texas, 180; Pool v. Pickett, 8 Texas, 122, 123; Henderson v. Kissam, 8 Texas, 55 to 57; McLaughlin v. Shannon, 22 S. W., 117, 118; Texas &

P. Ry. Co. v. Mangum, 68 Texas, 345; Brandt v. Lane, 118 S. W., 229, 231; Russell v. Heitmann, 86 S. W., 75; McCullar Lumber Co. v. Higginbotham. 118 S W., 885, 886; Kansas C. Ry. Co. v. Bermea, 54 S. W., 324; Bewley v. Schultz, 115 S. W., 294; Seley v. Whitfield, 46 S. W., 866.

As showing that the facts, given the most favorable construction to appellee Wynne under the law, showed merely a cause of action to enforce specific performance of an executory contract, or to recover damages for its breach, and that neither of such causes of action was maintainable outside of the county of appellant's residence, see: Cavin v. Hill, 83 Texas, 74; O'Connor v. Shannon, 30 S. W., 1097, 1098; Lucas v. Patton, 107 S. W., 1143 to 1146; McCampbell v. Durst, 40 S. W., 318 to 320; Durst v. Swift, 11 Texas, 273; Gulf, C. & S. F. Ry. Co. v. Foster, 44 S. W., 198; Parsons v. Hunt, 98 Texas, 426; Peterson v. McCauley, 25 S. W., 827, 828; Wallace v. Wilcox, 27 Texas, 61, 67; Prusiecke v. Ramzinski, 81 S. W., 772; Lang v. Rickmers, 70 Texas, 110.

*Hill & Elkins* and *Dean, Humphreys & Powell,* for appellee.—On the proposition that the facts at least apparently put the title in the plaintiff to the timber sued for, see: Hunter v. Eastham, 95 Texas, 648; Lyon v. Pollock, 99 U. S., 668; 25 L. Ed., 264, and notes; Kirby v. Cartwright, 106 S. W., 742.

Where plaintiff files his cause in a particular court or particular county, the jurisdiction and venue may be sustained though it is determined on the final hearing that he should not have the relief prayed for; and where if the relief granted only should have been asked, the court would not have had jurisdiction either over the subject matter or the person of the defendant. In such case where the petition shows that the jurisdiction and venue are properly laid, the suit will not abate unless the defendant alleges and proves that the allegations of the petition were made with fraudulent intent to invest the court with jurisdiction over the subject matter or the person of the defendant: Atchison, etc., Railway v. Williams, 86 S. W., 38; Toland v. Sutherlin, 110 S. W., 487; Ablowich v. National Bank, 95 Texas, 433; Bridge v. Carter, 77 S. W., 245

PLEASANTS, Chief Justice.—This suit was brought by appellee, G. A. Wynne, in the District Court of Walker County against appellant Burkitt and appellees, R. L. Dean, W. L. Johnson and W. H. Baty, to recover against all the defendants the title and possession of the growing timber upon the C. Carmona survey of land in said county, and, in the alternative, to recover of the defendant Burkitt the value of said timber.

The trial in the court below without a jury resulted in a judgment in favor of the plaintiff against the appellant Burkitt for the sum of $4400, with interest thereon from September 24, 1906, and in favor of the appellees Dean, Johnson and Baty that plaintiff take nothing against them.

Vol. LXII Civil-36.

Plaintiff's original petition, which was filed on October 6, 1906, alleged, in substance, that on the 13th day of September, 1906, plaintiff, acting through his agent, W. L. Hill, purchased from the appellant, through his duly authorized agent, J. S. Markham, all of the growing timber upon the tract of land before mentioned, together with the right of ingress and egress upon and from said land for a period of ten years for the purpose of cutting and removing said timber; that a conveyance of said timber was taken in the name of plaintiff's agent, W. L. Hill, who thereafter conveyed the timber and the rights and privileges before mentioned to plaintiff; "that the agreed purchase price of the timber was placed in the Gibbs National Bank of Huntsville and was tendered to defendant's agent, Markham, and has remained in said bank subject to the demand and draft of the defendant Burkitt; that on the 25th day of September, 1906, by a conveyance which purports to bear date the 24th of September, 1906, the defendant Burkitt undertook to convey all of said timber and right-of-way privileges to the defendants, Dean, Johnson and Baty, notwithstanding the same had already there-tofore been sold to the said Hill for the benefit of the plaintiff, and notwithstanding the same was then and has since said 13th day of September, 1906, been owned by plaintiff through the said Hill, who held the legal title thereto for plaintiff as aforesaid; and at the time of said attempted and pretended conveyance from the defendant Burkitt to the defendants, Dean, Johnson and Baty, all of the defendants well knew that the title to said timber and right-of-way privileges and other rights had passed to the said Hill and was then held by said Hill for plaintiff as aforesaid. Under the pretended conveyance from the defendant Burkitt to the other defendants, said other defendants, Dean, Johnson and Baty, are now undertaking to set up some kind of rights to said timber, and the claim being asserted by the defendants to said timber is a cloud upon plaintiff's title thereto, and the defendants, Dean, Johnson and Baty, have entered upon said land and are attempting to exclude from said timber, and are preventing plaintiff from entering upon said land to remove said timber therefrom."

It is then alleged that said timber and rights acquired by plaintiff by his said purchase are of the reasonable value of $10,000; and that if plaintiff is mistaken in the allegation that Dean, Johnson and Baty purchased from appellant with notice of rights in the timber and are entitled to hold same as innocent purchasers, that plaintiff is entitled to recover of defendant Burkitt as damages the difference between the value of the timber and the price agreed to be paid therefor by plaintiff. The prayer of the petition is in the alternative as above indicated.

Appellant Burkitt in due time filed and presented to the court a sworn plea of privilege to be sued in Anderson County. This plea avers that the domicile and residence of appellant, and that of all his co-defendants, had continuously been in Anderson County since long prior to September 13, 1906, and denies that he or either of his co-defendants had ever had a domicile or residence in Walker County, and also denies that

he had contracted in writing to perform any obligation sued on in Walker County. The plea further avers, "that the averment in appellee Wynne's original petition that appellant Burkitt, in person or by agent, had sold or executed and delivered a conveyance to Wynne, or to W. L. Hill, of the timber described in the petition, with rights of egress and ingress, besides right-of-way privileges; and the averment that appellee Wynne had become the owner thereof under any executed contract of sale; and the averment that appellees, Dean, Baty and Johnson, knew at the time of the conveyance to them from appellant Burkitt that the title to the timber and other rights had passed to Wynne, or to Hill; as well as the prayer for judgment for the timber and other rights, were untrue and fictitious; that in truth and in fact appellant Burkitt had never made, executed or delivered any sort of conveyance or other executed contract of sale, written or verbal, of timber, or of any interest in or right to the land, unto Wynne or Hill, either in Burkitt's own proper person or by agent, as appellee Wynne well knew; that in truth and in fact Dean, Baty and Johnson had acquired full and perfect title to the timber, under Burkitt, prior to the institution of the suit, as appellee Wynne well knew; that the suit did not come within any of the exceptions to article 1194, Rev. Stats.; and that appellee Wynne was pretending to sue appellant Burkitt and appellees, Dean, Baty and Johnson, for the recovery of the timber and appurtenant rights, for the sole purpose of maintaining the alleged action for damages against appellant Burkitt out of the county of his residence."

Appellees Dean, Baty and Johnson filed similar pleas to the venue and jurisdiction.

Appellee Wynne filed a replication to appellant's plea to the venue and jurisdiction, averring that the principal object of the suit was to recover the timber; that appellee believes he owned the superior title thereto; that the superior title to the timber under the conveyance from Burkitt to Dean, Baty and Johnson, was in Burkitt by reason of the reservation of the vendor's lien to secure payment of part of the purchase price of the timber, and that the conveyance contained a covenant of warranty; that the conveyance was not real, but only pretended; that the demand against Burkitt for damages was only incidental and conditioned on Dean, Baty and Johnson being bona fide purchasers.

The following facts were shown by the uncontradicted evidence on the hearing of the pleas to the venue and jurisdiction:

1. Appellant G. W. Burkitt and appellees R. L. Dean, W. L. Johnson and W. H. Baty have continuously resided and had their domicile in Anderson County, Texas, from long prior to September 13, 1906, to the time of the hearing of the pleas to the venue and jurisdiction, and neither one of said parties had ever resided or had his domicile in Walker County, Texas.

2. On May 19, 1906, G. W. Burkitt wrote to J. S. Markham the following letter: "Relative to selling the timber off the Carmona survey in Walker County, I will advise that, as stated in my letter of the 29th.

ulto., the price for the timber is $4446, which is one dollar per M ft., the 1276 acres averaging 3500 feet of pine per acre. If you want to sell that timber the following terms will be satisfactory: One-half cash down, and I will give plenty of time for the payment of the other half, with interest payable annually on the notes at the rate of seven per cent per annum; to secure the other half, I will accept bankable paper or a mortgage on sufficient land to make me secure. Three years is all that I care to give for the removal of the timber, but if necessary I will give five, reserving to myself, of course, the rights of ingress and egress to prospect for oil, etc. I am willing to pay five per cent commission for the sale of this timber. There are three real estate agents who have clients wishing to purchase this timber, and they now have the matter up; and of course, I shall pay the commission only to the one who sells the timber and notifies me he has the deal closed. So I will expect an answer from you by return mail."

On May 26, 1906, G. W. Burkitt wrote J. S. Markham the following letter: "Answering your letter of the 23rd, will advise that I will give the party ten years in which to remove the timber from the land. However, should the timber be removed in less than ten years, the land must be turned over to me when the timber is removed. I reserve to myself, of course, the right to prospect for oil and other minerals, and the rights of ingress and egress and the other rights incident to the production of oils and minerals. I also reserve the right to fence up the land for use for pasture purposes, etc. To prevent any mistake, will state again the terms of the sale of the timber, as set forth in my letter of the 19th of May. The price of the timber is $4466; and the following terms are satisfactory: One-half cash down, and I will give plenty of time for the payment of the other half, with interest payable annually on the notes at the rate of seven per cent per annum; to secure the other half I will accept bankable paper, or a mortgage on sufficient land to make me sesure. I am willing to pay you five per cent commission for the sale of this timber. There are two others contemplating buying this timber, and this offer holds good to the first one who comes and closes the deal with me. I reserve to myself the right to close deal with the first one who is ready to close. The timber referred to is on the C. Carmona survey in Walker County."

The above letters were introduced in evidence by plaintiff and by defendants to show the extent of Markham's authority, as agent for Burkitt, in the sale of the timber.

3. In May, 1906, W. L. Hill discussed the purchase of the timber with G. W. Burkitt at Houston, but he declined to buy the timber because Burkitt wanted all cash, or half cash and the other half secured by mortgage on real estate.

4. On July 22, 1906, G. W. Burkitt wrote W. H. Baty, at Neches, that $4466 was the price of the timber; that he would take half cash and the balance in bankable paper, or balance when he began to cut the timber; that he was in no hurry for the money if properly secured and

bearing six per cent interest; and that he would give reasonable terms to remove the timber. On July 22, 1906, G. W. Burkitt advised his agent at Palestine, E. L. Howell, that he had written Baty to name a day he could meet him in Palestine, and if. he did not hear from him (Burkitt) to go ahead to Palestine and arrange the matter with Howell, and Burkitt directed Howell to fix up the papers when Baty came.

5. On August 2, 1906, W. H. Baty wrote G. W. Burkitt, at Houston, that his letter was forwarded to Hot Springs; that he and his associates (being R. L. Dean and W. L. Johnson), would take the timber, at his price and terms; that he would be at Neches sometime the next week and would make a date for a personal meeting to close out and draw up papers and make payment.

6. About the 2nd day of September, 1906, Baty, Dean and Johnson called on Howell and agreed to buy the timber from Burkitt, subject to their approval on inspection, at $4466, payable half cash and the other half, bearing six per cent interest, when they began to cut the timber, it being agreed that Baty, Dean and Johnson should at once procure abstract; and conveyance was to be executed and money and notes delivered when the title disclosed by the abstract should be approved by the purchaser's attorneys.

7. Dean, Baty and Johnson procured an abstract on September 6, 1906, dated September 5, 1906, after inspecting and approving the timber, and delivered it to Messrs. Gregg & Brown, attorneys at Palestine, for their opinion.

8. On September 13, 1906, J. S. Markham executed to W. L. Hill this instrument:

"The State of Texas,. County of Walker.

"This memorandum witnesseth, that on this the 13th day of September, 1906, I, as agent for Geo. W. Burkitt, have sold to W. L. Hill, who buys the same for a client of his, all the timber on the 1276 acres of land in the C. Carmona survey in Walker County, Texas, owned by said Burkitt, for the sum of $4466 cash, to be paid immediately upon execution and delivery by the said Geo. W. Burkitt to the said W. L. Hill of a conveyance of said timber, in which conveyance the said Hill, or other holder of said timber under him, should have ten years within which to remove said timber from the land, and for the purpose of removing said timber from the land the purchaser is to have right-of-way upon and over said land. This sale is made pursuant to written authority from the said Burkitt to me. Witness my hand the day and month above written.
                                                        "J. S. Markham."

The above paper was delivered to appellant Burkitt's attorney, by the attorneys for appellee Wynne, in response to the request made in open court for the writing under which Wynne claimed title to the timber sued for, and it is undisputed that Wynne never had any other transfer.

9.   On September 13, 1906, J. S. Markham wrote to G. W. Burkitt the following letter, by dictation of W. L. Hill, towit:

"I have sold the timber on your land in the Carmona survey as per the terms stated in your letter to me of May 26, 1906. You can prepare the deed to W. L. Hill of Walker County, Texas, embodying the terms of the letter. You can make the consideration cash, or one-half cash and the balance to suit yourself, at seven per cent per annum. The purchaser prefers to pay all cash, if this is agreeable to you; and if you prefer to have notes, he would have the stipulation in the notes that they may be paid on or before the date due thereof. When you have executed the deed you can forward it to the Gibbs National Bank of this place, with draft attached for the amount of the cash consideration, or if you wish to make the same part cash and part deferred payments, forward the notes with the said deed and they will be executed, and notes with the security submitted to you for approval. Please let me hear from you at once."

10.   On September 17, 1906, G. W. Burkitt, from Houston, wrote W. H. Baty, at Neches, in Anderson County, that he would consider the trade with him off if he did not close in three days. This letter was sent by registered mail, and was not received until September 19, 1906.

11.   On September 17, 1906, Howell, from Palestine, wrote Burkitt, at Houston, that he had agreed for the title to be investigated; that Baty had procured an abstract and submitted it to Gregg of the firm of Gregg & Brown, attorneys at Palestine; that Gregg had found a serious defect in the title, which he was trying to find evidence to cure by means of data to be obtained from New Orleans; that Baty had assured him positively the previous week that his people would take the timber, and Baty had shown him a letter so stating; and he did not think there would be any hitch as soon as the title papers were cleared.

On September 18, 1906, Baty went to Palestine, in Anderson County, and assured Howell he would take the timber on approval of the title.

12.   After receiving Howell's letter of the 17th, G. W. Burkitt, from Houston, wrote J. S. Markham on September 19, 1906, acknowledging receipt of his letter of September 13th saying he had sold the timber on the Carmona survey for $4465 cash, or half cash and the balance in marketable paper; that this trade was all right, but for the fact that he had given a man by the name of Baty of Neches his promise that he would give him the preference on that tract of timber; that he wrote him a registered letter Monday and tried to get him over the phone that day, but found he was out of town and found he would not be back until Friday; that if Baty took the timber, it would be on the same terms he was selling it to him, but, as he had given his word that he would let him know before he made a sale and give him a chance to buy it, he would have to wait and hear from him, and just as soon as he heard, he would advise Mr. Markham on the subject and send papers to Huntsville, with draft attached, should he decline same.

On or about Saturday, September 22, 1906, Gregg & Brown approved

the title to the timber, on a telegram from New Orleans, and they at once prepared a bill of sale and forwarded it to Burkitt for his signature and acknowledgment.

While there is some confusion in the testimony as to the very date when Gregg & Brown approved the title, it is undisputed that Dean, Baty and Johnson were entitled to an abstract showing a good title, under their contract with Burkitt, and that as soon as the abstract was perfected and approved, Dean, Baty and Johnson offered to comply with the agreement; that thereupon Gregg & Brown drafted a bill of sale to the timber, which it was agreed could not be executed by Burkitt and ready for delivery till Tuesday, but which was signed and acknowledged by Burkitt on Monday, September 24, 1906, and which was delivered not later than Tuesday, September 25, 1906, and then Dean, Baty and Johnson paid Burkitt the consideration as follows: $2233 in cash, through the Royall National Bank of Palestine, and gave their note for another $2233.

14. W. L. Hill testified that on the evening of Saturday, September 22, 1906, he had a telephone conversation with G. W. Burkitt, in which Burkitt stated to him that if Baty did not take the timber by Monday it was his, and that he left the telephone with that understanding. Burkitt was talking from Houston, while Howell at Palestine had already practically closed out with Baty, Dean and Johnson on this same Saturday.

On Monday, September 24, 1906, the same day Burkitt signed and acknowledged the bill of sale to Dean, Baty and Johnson, he sent the following telegram:

"J. S Markham, Huntsville, Texas.

"Deal for timber to be closed Tuesday afternoon to Palestine party. If it falls through, will wire you Wednesday morning and you can have timber. G. W. Burkitt."

This telegram was sent as soon after the telephonic conversation of Saturday between Burkitt and Hill, as Burkitt could have acquired knowledge of his agreement of Saturday, acting through Howell, with Dean, Baty and Johnson.

To this telegram the following replies were sent the next day:

"Huntsville, Texas, Sept. 25, 1906.
"G. W. Burkitt, Palestine, Texas.

"Don't close deal before seeing letter. Refer you to your letter of nineteenth. J. S. Markham."

"Huntsville, Texas, Sept. 25, 1906.
"G. W. Burkitt, Palestine, Texas.

"Markham has just shown me your telegram of yesterday morning. I claim the right to purchase, and money, $4466, is in the Gibbs National Bank of this place, subject to your order upon delivery of deed. I am

buying this for party who will suffer materially if you fail to comply with terms of your letters. I insist that you do not close with other party. W. L. Hill, Attorney."

"Huntsville, Texas, Sept. 25, 1906.

"To George W. Burkitt, Palestine.

"W. L. Hill has deposited in this bank $4466, subject to your order upon delivery of deed to the timber on the Carmona land. Gibbs· National Bank, G. A. Wynne, Cashier."

On October 2, 1906, W. L. Hill executed a formal bill of sale, purporting to transfer to appellee G. A. Wynne the timber and appurtenant rights described in the memorandum signed by Markham on September 13, 1906.

Upon these facts the trial court overruled the pleas of privilege, to which ruling appellant duly excepted. Thereafter appellee Wynne filed an amended petition containing in substance the allegations of the original petition, but setting out in full the instrument executed by J. S. Markham on September 13, 1906, before copied, as the basis of plaintiff's claim of title to the timber. To this petition appellant filed a special exception raising the question of venue. This exception was overruled and appellant excepted to said ruling.

Under appropriate assignments of error appellant complains of the judgment of the trial court overruling his plea of privilege to be sued in the county of his residence, on the ground that the undisputed evidence introduced upon the hearing of said plea shows that if plaintiff has any cause of action against any of the defendants it was either a right to enforce specific performance of an existing contract for the sale of timber, or to recover damages for the breach of such contract, and upon such cause of action defendants were entitled to have the suit tried in the county of their residence, such character of suit not being within any of the exceptions contained in article 1194, Revised Statutes.

The majority of the court think these assignments should be sustained. The instrument executed by Markham on September 13, 1906, under which appellee claims title, shows upon its face that the contract of sale of the timber by Markham was an executory and not an executed contract. It conveys only a chose in action, not a chose in possession. This instrument does not purport to convey the title to the timber, but recites that such conveyance is to be made by appellant and that the purchase money is to be paid upon the execution and delivery of the conveyance. Appellee's agent, Hill, in whose name the contract was executed, knew when the instrument was executed and delivered to him the extent of Markham's authority as agent of appellant and that the letters, or power of attorney, under which Markham acted, and which we have before set out, clearly contemplated that any agreement of sale made by Markham should be submitted to appellant and that the conveyance of the title to the property, as recited in the contract of sale, was to be made by appellant.

The sale of growing timber, with the right of ingress and egress for ten years for the purpose of cutting and removing the timber, is a sale of an interest in the land that can only pass by deed or grant, and therefore the venue of a suit for specific performance of such a contract of sale, or for damages for breach thereof, is the same as in a suit for specific performance of a contract to convey land. Gulf, C. &. S. F. Ry. Co. v. Foster, 44 S. W., 198; Parsons v. Hunt, 98 Texas, 426. That a suit of this character is an action *in personam* and must be brought in the county in which the defendant resides seems to be settled by the decision of our courts. Miller v. Rusk, 17 Texas, 170; Cavin v. Hill 83 Texas, 74; Lucas v. Patton, 49 Texas Civ. App., 62 (107 S. W., 1143).

Appellee contends that if it be conceded that the only cause of action shown by the evidence was a personal action, the venue of which was in the county of defendant's residence, that he had reasonable grounds to believe and did believe when he brought his suit, that he held the title and could recover possession of the property, and his allegations of ownership not having been fraudulently made for the purpose of fixing the venue in Walker County, the defendant's plea of privilege was properly overruled. This contention, under the facts of this case, amounts to this: That notwithstanding the fact that the defendant by proper pleadings seasonably presented and supported by the uncontradicted evidence has established his right to have the only cause of action which plaintiff has against him tried in the county of his residence, he will be denied that right because plaintiff, under a mistaken view of the law, believed when he brought the suit that he had a cause of action against defendant which defendant would be required to answer in the county in which the suit was brought. This proposition can not be sound. It is true that in suits in which the jurisdiction of the court depends upon the amount in controversy or the existence of a lien, and also cases in which the venue of the suit against a non-resident defendant depends upon whether the plaintiff has a cause of action against the resident defendant who is joined in the suit, the question of whether the amount in controversy or the existence of a lien in the one case, or the cause of action against the resident defendant in the other, was fraudulently alleged for the purpose of fixing the jurisdiction or venue, has been held to be controlling. Ablowitch v. Greenville National Bank, 95 Texas, 433; Bridge v. Carter, 33 Texas Civ. App., 591 (77 S. W., 245); Atchison, T. & S. F. Ry. v. Williams, 38 Texas Civ. App., 405 (86 S. W., 38); Toland v. Sutherlin, 49 Texas Civ. App., 538 (110 S. W., 487).

But these cases do not sustain the proposition that when upon a hearing of a plea of privilege the undisputed evidence establishes facts which were known to plaintiff at the time the suit was brought and which show that the cause of action alleged by him and upon which the venue depends does not exist, the fact that plaintiff may have honestly believed that the facts did give the cause of action alleged, will defeat the plea of privilege. Appellee must be held charged with the knowledge of the

law, that his contract of sale with Markham did not give him title to the timber, and that his only right under said contract was to sue for specific performance or for damages for breach of said contract and that such suit is a personal action, the venue of which is in the county of the defendant's residence. Groos v. Brewster, 55 S. W., 592. Having brought the suit with knowledge of the facts, he could not, by alleging that he owned the timber, it matters not how honest he may have been in believing that he had title thereto, defeat the defendant's right to be sued in the county of his residence. In a suit for specific performance of a contract to convey land, if the plaintiff establish his claim, the decree would vest title in him and he would in effect recover the land; but, as before said, the suit is not technically a suit for the land, and the venue of such suit is not controlled by the statute fixing venue of suits for the recovery of land. Miller v. Rusk, and Cavin v. Hill, *supra*.

It follows from what has been said that the judgment of the court below overruling appellant's plea of privilege should be reversed and judgment here rendered sustaining said plea and ordering the cause transferred to the District Court of Anderson County, and it has been so ordered.

Justice Reese dissents from the views of the majority and will file his conclusions.

· *Reversed and rendered.*

REESE, Associate Justice, *dissenting.*—I am compelled to dissent from the views of the majority in the decision of this case. I would probably not be inclined to persist in such dissent but for the fact that what I conceive to be a proper view of the law upon the questions involved will lead to a final decision of the controversy upon this appeal instead of sending the case back for another trial, something to be avoided, in my opinion, whenever it can be done consistently with the principles of law.

The opinion of the majority contains a sufficiently full statement of the issues and evidence for the purposes of this dissenting opinion.

As I understand the conclusions of the majority they rest upon the proposition that the contract of sale from Markham as agent of Burkitt, under the authority conferred upon him by Burkitt, did not authorize a recovery of the standing timber in an action therefor. The rule is stated that this contract must be construed as a contract for the sale of land, and to this I agree.

Resting its opinion upon the case of Groos v. Brewester (55 S. W., 592) and Cavin v. Hill (83 Texas, 74), the majority holds that under the facts stated in his amended petition, or if not so stated, at least shown to have been known to him, appellee Wynne had only a right of action for a specific performance, or for damages for failure or refusal to convey, and did not have a right to recover the timber. I have no criticism to make of the opinions referred to in so far as they announce the proposition that if appellee knew of the existence of facts, upon

which he would have no right of action to recover the land, and was simply mistaken in the law applicable to such facts, the venue of this case in Walker County could not be sustained upon the mere ground that such mistake was an honest one made in good faith. As said by the court in Groos v. Brewster, *supra,* "While plaintiff might not be held to anticipate how an issue of fact may be resolved by a court or jury, he is held to a knowledge of the law applicable to the facts of his case." So, the majority holds that as Wynne was not mistaken as to the facts, but only as to the law, he can not be held to have acted in good faith in suing for the land, which he could do in Walker County, and the joinder of that cause of action would not support the venue as to the other two alternative causes of action, as to both of which Burkitt had a right to be sued in the county of his residence. If, upon the facts known to him, and upon his claim under the contract of sale, deposit of the purchase price in the bank to the credit of Burkitt—a mode of payment not objected to, but ratified and accepted by Burkitt—Wynne would have been entitled to recover the timber unless defeated by other facts, towit, the sale to Dean, Johnson and Baty, not known to him, Wynne would have been entitled to recover the land, I understand the majority would hold that the entire suit was properly brought in Walker County, where the timber lay, and the owner would not be defeated if the development of the facts with regard to the sale to Dean, Johnson and Baty, defeated his recovery of the timber. The effect of the holding of the majority is that if Burkitt had made no sale, and the other parties be eliminated from the case, Wynne could not have recovered in an action against Burkitt for the timber, but his only remedy would be a suit for specific performance or damages. This brings us to the essential point of difference between the writer and the majority of the court.

Burkitt did authorize Markham in writing to sell the timber. This is the language of his authorization. Under this written authority Markham did sell the timber to Wynne and executed to him the instrument copied in the opinion of the court, which, I will agree, was a contract of sale to be completed by the execution of a deed by Burkitt. It is true that the letters of Burkitt authorized a sale for one-half cash and the balance on time, but this departure from the terms of his authority by Markham was not objected to by Burkitt but was accepted and ratified by him, and it is shown that such terms were intended as a concession to the purchaser, and that Burkitt really preferred all cash. Thus, the sale was substantially in compliance with the authority. This contract of sale by his agent duly authorized, was Burkitt's contract of sale, as binding on him as though made and executed by him in person. The most that can be made out of it by Burkitt is that it was an executory contract to convey the timber (land), which, upon the payment of the purchase price, created an equitable title only, leaving the legal title in Burkitt until he could execute a conveyance. It is true that the purchase money was not paid nor tendered to Burkitt in strict form. It was, however, tendered to Markham and deposited in a bank subject to

his order, and he appears to have fully accepted it as payment afterwards, and to be satisfied therewith if Dean, Johnson and Baty did not complete their purchase. This, I think, made of the whole transaction an executory contract to convey the land, with the purchase price paid; for, when the rights of a party depend upon payment, a tender made and refused is the equivalent of payment. Under all the authorities in this State such a contract vested in the purchaser an equitable title to land, which authorized a recovery of it in an action of trespass to try title. (Miller v. Alexander, 8 Texas, 36; Wright v. Thompson, 14 Texas, 561; Secrest v. Jones, 21 Texas, 132; Scarborough v. Arrant, 25 Texas, 131; Downes v. Porter, 54 Texas, 61; Neyland v. Ward, 22 Texas Civ. App., 369 (54 S. W., 604); Thompson v. Locke, 66 Texas, 383.)

It was said by the Supreme Court in Thompson v. Locke, *supra:*

"The action of trespass to try title serves the purpose of an action of ejectment in this State, but in it the question of title as well as the right to the possession is determined and as fully settled as could it be by a suit to quiet title: hence seldom, if ever, could a suit to quiet title, technically considered, be here necessary. The suits contemplated must be suits of broader purpose, embracing suits founded even on equitable titles, instituted to remove cloud from such title, and suits necessary, as occasion may require it, to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right."

If Burkitt had not sold the timber to Dean, Johnson and Baty, but refused to carry out the contract his agent had made, or if, at or prior to the time of the sale by him or his agent to Dean, Johnson and Baty, they had had full knowledge of the rights of Wynne under the contract with Markham, I think Wynne could have recovered the timber in this suit unless such right was defeated by the facts, not known to him, of the negotiations previous to his purchase between Howell, as the agent of Burkitt, and Dean, Johnson and Baty, which afterwards eventuated in the sale to them. The letters of Burkitt, which were Markham's authority to sell, conveyed to Wynne notice that Burkitt reserved the right to sell to the first person who was ready to close the deal for the purchase of the timber, but he did not know when he brought his suit that Dean, Johnson and Baty had closed their deal with Burkitt's agent before he bought, and were therefore entitled to the timber, or of the previous contract of sale with these parties. This was defensive matter which, when interposed by defendants, could not defeat the venue, whatever effect it might have in defeating Wynne's right to recover anything.

I conclude that the trial court did not err in overruling the plea of privilege of defendants and proceeding to try the case. If I am correct in this conclusion, this court should have disposed of the appeal upon the merits, instead of remanding to the District Court of Anderson County for trial.

As the opinion of the majority deals only with the question of venue, this dissenting opinion might properly stop here, but it may assist in

a speedier disposition of the whole matter, in case the Supreme Court, upon a certificate of dissent or application for writ of error, should agree with this opinion on the issue decided, if it should be added that we all agree that upon the undisputed evidence appellee is not entitled to recover either timber or damages.   The facts set out in the opinion of the court are established by the undisputed evidence, which shows that before the contract of sale by Markham to Hill for Wynne, Burkitt had become bound to sell the timber to Dean, Johnson and Baty, which contract was afterwards fully consummated, and that in the power of attorney or authority to sell given by Burkitt to Markham, he had clearly reserved this right.   Hill having knowledge of this took the contract subject thereto.

Writ of error refused.