FRANK HAMM, RECEIVER, ETC., V. JAMES DREW ET AL.

No. 3175.

**General Manager—Agent—Purchaser.**—The J. Stone & Sons Live Stock Company was a corporation under the general laws of Texas for the purpose of "carrying on a general business in the purchase, raising, and selling of live stock of any and all kinds." Its president was a nonresident. Its principal office was at Dallas. No general manager was provided for in its charter. Drew was one of the directors and had acted for several years as general business manager. May 21, 1886, Drew as agent of the corporation sold to Cockrell five stallions, the property of the company. Hamm, receiver of the corporation, sued Drew and Cockrell for the stallions, alleging that Drew was bailee and had wrongfully sold the stallions with intent to defraud the company, and that Cockrell had notice of such facts. Drew disclaimed any interest in the stallions, alleged he had sold them at value and in discharge of his duty as manager, etc., denying all allegations made against him. Cockrell pleaded his purchase in good faith from Drew, the general manager of the plaintiff company. On appeal, *Held:*

1.  The court erred in dismissing as to Drew upon his disclaimer; relief was asked against him for conversion of the property.

2.  It was competent to allow evidence of Drew's acting for the company in other counties, and in the year 1885, although Cockrell knew nothing of such acts. The testimony tended to show Drew's agency.

3.  If Drew was the general manager in fact, he had authority to sell the stallions, for that was a part of the property of the corporation.

4.  Cockrell having pleaded his purchase from the company, could prove under his pleading his buying them from the managing agent; for a corporation must of necessity act through agents.

5.  The mode of election of Drew as manager is of no consequence. If he acted as such and his acts were approved, this would show his agency.

6. The company had power to appoint a general manager, although such office was not named in its charter or by-laws.

7. Cockrell being ignorant of the insolvency of the company, and of any fraudulent intent of Drew, inquiry into these questions could not affect his (Cockrell's) title.

8. The allegations touching Drew's conversion of the property while in his hands as trustee, giving items of value, time, etc., were sufficient as a cause of action against him, not affected by his disclaimer.

APPEAL from Dallas. Tried below before Hon. GEORGE N. ALD-REDGE.

The opinion states the case.

*Geo. H. Plowman*, for appellant.—1. Defendant Drew's pretended disclaimer was no disclaimer; and being a general denial; by the proof appellant was entitled under his prayer for general relief to judgment against Drew for the value of the animals converted by Drew to his own use. Wintz v. Morrison, 17 Texas, 374, 375; Dial v. Dial, 21 Texas, 530; Hipp v. Huchett, 4 Texas, 24; Hardy v. De Leon, 5 Texas, 212; De Uprey v. De Uprey, 27 Cal., 331–335; Noe v. Card, 14 Cal., 576–600.

2. Appellee Cockrell having pleaded that he purchased the property from J. Stone & Sons Live Stock Company, could sustain same only by showing that the sale by the agent was in fact authorized by the said company; and any course of dealing by the company with the public by which the company would be estopped to deny Drew's authority—being in the nature of confession and avoidance, and not in a land suit—should have been specially pleaded to admit evidence of same. Love v. McIntyre, 3 Texas, 12; Rule 7 for District Courts; Banking Co. v. Stone, 49 Texas, 15; Ins. Co. v. Davidge, 51 Texas, 244; Banking Co. v. Hutchins, 53 Texas, 61; Humphreys v. McCall, 4 Cal., 233; Gill v. Rice, 13 Wis., 615; Wood v. Ostram, 29 Ind., 177; Herm. on Estop., sec. 611, p. 560.

3. If the company, years prior to 1886, had allowed James Drew to manage the affairs of the company, or clothed him with ostensible general authority in Van Zandt County, it was incumbent upon appellee to show that he knew this, and bought upon the faith thereof, and did not know that such general authority was ended. This authority, if it existed, ceased when Drew made special contract with the president to stand the stallions for 1886 in Dallas County. Drew thereafter left the ranch. Frank Stone was in charge. The company held him out in 1886 as authorized only to stand the stallions, and, as appellee says, "this was a very different thing from having the right to sell them." A sale of them was beyond the scope of his apparent authority. His general agency. if it ever existed, had ceased long prior to the Cockrell purchase. His authority was limited and his agency special, and in such case the purchaser buys at his own peril. McAl-

pin v. Cassidy, 17 Texas, 461; Garner v. Butcher, 1 Posey's U. C., 436, Kohn Bros. v. Washer, 64 Texas, 131; Buzzard v. Jolly, 6 S. W. Rep., 422; Mech. on Ag., sec. 788; Bernard v. Campbell, 14 Am. Rep., 289, 294.

*Bassett, Seay & Muse,* for appellees.—1. The dismissal as to Drew, if error, was harmless, and no ground for reversal.    Dwyer v. Rippetoe, 72 Texas, 520, 539, 540.

2.    The evidence tending to show the previous agency of Drew was competent and relevant to the issue of his authority to sell the stock at the time it was sold to Cockrell.

3.    No special plea denying the plaintiff's right to recover was necessary.    The issue was presented by the general denial, and by Cockrell's plea alleging title in himself.

4.    The conclusions of fact found by the court are abundantly sustained by the evidence, and upon the evidence no other judgment could properly have been rendered.

GARRETT, PRESIDING JUDGE, *Section B.*—Suit was against Drew and Cockrell for the recovery of five stallions.    Appellant sued as the receiver of the J. Stone & Sons Live Stock Company.    Appellee Drew, who had charge of the stallions for said company, sold them to the appellee Cockrell a short time before Hamm was appointed receiver.    His authority to sell was denied.    The petition, after setting out that Drew was the bailee of the stallions to keep and manage the same for said company, and describing and alleging the value of the stallions, charged, in effect, that on the 21st day of May, 1886, Drew fraudulently converted said property to his own use with intent to defraud said company, and fraudulently, unlawfully, and pretendingly conveyed said property to Alex. Cockrell, to whom all of which was well known, and that said defendants have and do unlawfully detain said property, and have converted same to their own use, and refuse to deliver same to plaintiff; and prayed judgment for the recovery of said property, costs of suit, and general relief.

Drew answered, and disclaimed any right, title, or interest in the property; denied that he had possession thereof at the commencement of the suit, and that he set up any claim thereto.    He denied that he sold said property to his codefendant Cockrell for the purpose of defrauding the J. Stone & Sons Live Stock Company, and alleged that the sale was in the regular line of business as agent and manager for said company, and that he received a full compensation for the property.    He denied all the allegations in the petition in regard to himself, and asked to be allowed to go hence, etc.    He was discharged by the court on his disclaimer, with his costs.

Defendant Cockrell denied generally all and singular the allegations in plaintiff's petition, and answered specially that before the commencement of this suit he purchased the property in controversy, paying a full and valuable compensation therefor, having purchased the same from J. Stone & Sons Live Stock Company; and that he was then, and for a long time before the bringing of the suit had been, the bona fide owner of said property.

Trial was had before the court without a jury, and judgment was rendered in favor of Cockrell.

Appellant has assigned as error the action of the court in dismissing Drew on his disclaimer, the admission of evidence, and the conclusions of fact and of law.

Several witnesses were permitted to testify as to transactions and dealings with Drew, as the representative of the J. Stone & Sons Live Stock Company, during the year 1885 and prior thereto, tending to show that he was the general manager or agent of the company. J. Stone & Sons Live Stock Company was incorporated under the general incorporation law of Texas, in March, 1882, for the purpose of "carrying on a general business in the purchase, raising, and selling of live stock of any and all kinds." The charter provided that the legal domicile of the company should be at Dallas, Texas, and that the business of the company should be transacted at Dallas and such other point or points where said company might own or carry on ranches, etc., and purchase and sell cattle and other live stock. There was a board of five directors, and the by-laws provided for a president, vice-president, secretary, and treasurer. No general manager was provided for in the charter or by-laws; but Drew was a director, and had been elected general manager and had acted as general manager of the company for a long time prior to the sale of the stallions by him to Cockrell. At the time of the sale, however, he had the stallions in Dallas and adjoining counties at different places for the special purpose of service to mares.

The objections to the evidence of the witnesses as to the transactions and acts of Drew tending to show that he was the general manager of the company were, generally, that the pleading of the defendant Cockrell was not sufficient to authorize the admission of such proof; that it was of transactions occurring in 1885 and before that time, generally in Van Zandt County, and was too remote; that it was not shown that Cockrell had notice of such acts or relied upon the same; and that it was of acts different in nature from that of selling stallions. None of these objections are tenable. It was not necessary that Cockrell should have had notice of the transactions to make proof of them competent evidence to show that Drew was in fact the general manager of the business of the J. Stone & Sons Live Stock Company. Cockrell's position was, and it was so found as a fact by the court, that Drew was

the general manager and only acting business agent of the company, and it was competent to prove this by evidence of transactions showing that he acted in such capacity. If Drew was the general manager, he had authority to sell the stallions, for that was a part of the purpose of the corporation. It was more in keeping with the purposes than breeding them to the mares of other persons. Cockrell pleaded that he had bought the stallions from the company, which was sufficient to admit of proof that he bought them from the managing agent of the company, for a corporation must necessarily act through agents. The transactions were not too remote in point of time or place.

Further objection was made to the evidence of Frank Stone, who was the secretary of the company, that Drew was elected general manager at a meeting held at the ranch in Van Zandt County; that it was inadmissible, because there was no such officer known in the constitution or by-laws; that the meeting did not take place at the legal domicile of the company, by reason of which the election was void; and that it could not be shown by parol evidence. The company had the authority to appoint such agents as it might deem necessary, although such authority was not expressly conferred in the charter. Mech. on Ag., sec. 44. The president of the company, it seems, resided out of the State, and the business of the corporation appeared to have been transacted, so far as general management was concerned, almost entirely by Drew. This was shown by other testimony as well as that which was objected to. It is immaterial, as against strangers, whether the person acting as managing director of a corporation received a specific appointment to that position from the board of directors, if he has long acted in that capacity without objection, and if his services as such have been invariably accepted. 1 Beach on Corp., sec. 181. If Drew was de facto the general manager of the company, it could make no difference in this case whether his election was legal or not. His authority as general manager may also be shown by parol, although it was conferred at a meeting of the board of directors of which minutes were kept in writing. 1 Beach on Corp., sec. 181.

We think that the findings of the judge who tried the case, that Drew was the general manager of the J. Stone & Sons Live Stock Company, and that the defendant Cockrell bought the stallions in good faith, are fully supported by the evidence, and do not think it necessary to discuss the facts. It having been shown that Cockrell bought without notice of the failing and insolvent condition of the company, and of Drew's purpose in making the sale, it is immaterial whether his title to the property would have been affected by such notice or not, in case he had had notice, this being a suit by the receiver of the insolvent company to avoid the sale.

Drew should not have been dismissed by the court on his pleading. It was not a disclaimer, whatever it may have been called, but was in

effect a denial of the plaintiff's cause of action against him—a special defense that the sale was made by him bona fide as the agent and manager for the J. Stone & Sons Live Stock Company; and denial that it was for the purpose of defrauding the said company, and disclaimed title at the institution of the suit. A disclaimer should be absolute and unqualified; but there could be no disclaimer in this case. But it having been concluded that there was no cause of action against Cockrell, it remains to determine whether or not the error in permitting Drew to be dismissed with his costs was material. If no other judgment could have been rendered against him, it would be immaterial.

There could be no cause of action against Drew ordinarily for the sale of the horses, or for a conversion if he had the right to sell them; but the plaintiff alleged that Drew was the bailee for the company, and "that said James Drew, on, to-wit, May 21, 1886, wrongfully, unlawfully, and fraudulently converted said property to his own use, and with intent to defraud said company, wrongfully, unlawfully, and fraudulently, and pretendingly conveyed said property to said defendant Alex. Cockrell, to whom all of which was well known, and that said Drew and said Cockrell have and do unlawfully detain possession of said property, and have converted same to their own use and refuse to deliver same to plaintiff." The value of each of the stallions was alleged, and each was specifically described. As the bailee of the stallions, and a director of the company, Drew was a trustee of the property, and in the absence of special exceptions we think that the allegations in the petition are sufficient to charge him as trustee with a fraudulent conversion of the horses to his own use, and although the sale to Cockrell was valid, Drew should be held to an account to the plaintiff as receiver of the company for such damages as it may have sustained by reason of his action in the sale of the property by him, it being shown that he had converted the proceeds thereof to his own use. There is a prayer for general relief which would authorize such judgment. As trustee of the property for the company and its creditors, he should be held to account for the property, and whatever defenses he may have may be heard on another trial.

We think the judgment of the court below should be affirmed as to the defendant Cockrell; but as to the defendant Drew, it should be reversed and remanded for another trial.

*Affirmed as to Cockrell.*
*Reversed and remanded as to Drew.*