### HOUSTON OIL CO. OF TEXAS v. PAYNE et al.

(Court of Civil Appeals of Texas. Galveston. Jan. 30, 1914. Rehearing Denied Feb. 26, 1914.)

1. PRINCIPAL AND AGENT (§ 117*)—CONVEYANCE BY AGENT—NECESSITY THAT AGENT'S AUTHORITY BE IN WRITING.

Written authority is not necessary to enable an agent to bind his principal by an executory contract for the sale of lands.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 378–390; Dec. Dig. § 117.*]

2. FRAUDS, STATUTE OF (§ 116*)—SALE OF LAND BY AGENT—NECESSITY THAT AGENT'S AUTHORITY BE IN WRITING.

Rev. St. 1895, art. 624, declaring that no estate or inheritance or freehold, etc., in lands and tenements shall be conveyed except by an instrument in writing, subscribed, etc., by the grantor, or by his agent thereto authorized in writing, does not prevent an agent from binding his principal by a parol sale under all circumstances.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 251–260; Dec. Dig. § 116.*]

3. CORPORATIONS (§ 432*)—POWER OF AGENT—CONVEYANCE—EVIDENCE.

In an action for land, evidence *held* to show that an agent of a land and lumber company, a corporation, had authority to bind the company by a verbal sale of land.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718, 1724, 1726–1735, 1737, 1743, 1762; Dec. Dig. § 432.*]

4. CORPORATIONS (§ 432*)—EVIDENCE AS TO AUTHORITY OF AGENT—COURSE OF DEALING.

Authority of an agent to act for a corporation may be shown by a course of dealing in which the acts of the alleged agent were known and recognized by the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718, 1724, 1726–1735, 1737, 1743, 1762; Dec. Dig. § 432.*]

5. FRAUDS, STATUTE OF (§ 137*)—OPERATION AND EFFECT—PART PERFORMANCE—PAROL SALE OF LAND.

Where defendant, in pursuance of a parol contract with the agent of a land and lumber company, whereby the agent agreed to give defendant 160 acres of a certain survey if defendant would look after and keep trespassers off the company's land, performed his part of the contract and took possession of and erected permanent and valuable improvements upon the 160 acres, he acquired an equitable title which the court will protect.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 301–326; Dec. Dig. § 137.*]

6. FRAUDS, STATUTE OF (§ 129*)—PART PERFORMANCE—POSSESSION UNDER PAROL SALE.

A vendee under a parol sale of land, by permitting his vendor to thereafter enter and re-

---

move the timber, as was provided by the contract, did not thereby yield posession so as to affect his equitable title under the parol sale.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–292, 303, 306–308, 311, 314, 318–320, 322, 325, 326; Dec. Dig. § 129.*]

7. APPEAL AND ERROR (§ 1041*)—REVIEW—HARMLESS ERROR.

Where defendant's original answer alleged that plaintiff's agent had express authority to make the contract in controversy, any error in permitting defendant at the trial to amend so as to allege that the agent had implied authority, etc., and refusing plaintiff a continuance, was not prejudicial, where the agent on the stand admitted that he did have express authority.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4106–4109; Dec. Dig. § 1041.*]

8. EVIDENCE (§ 471*)—CONCLUSIONS AND MATTERS OF OPINION — AUTHORITY OF AGENT.

The testimony of a corporation's agent, to the effect that he had full authority to contract with any person with respect to the company's titles which in his judgment was best for the company's interest, and that he represented the company in Texas as though he were the sole officer, etc., were not conclusions of the witnesses, but statements of fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

9. APPEAL AND ERROR (§ 1050*)—EVIDENCE (§ 471*)—REVIEW—HARMLESS ERROR.

Though it were error to permit the general manager of a corporation to testify that the duties of his office where such as the title signified, and as were usually exercised by the manager of a corporation, because a conclusion, it was not prejudicial, where he stated all the facts as to his authority.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050;* Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

10. CORPORATIONS (§ 432*)—EVIDENCE AS TO AUTHORITY OF AGENT.

It is not necessary that the authority of an agent of a corporation be shown by a record or recital of corporate action, but it may be conferred by a vote of the directors not entered of record, or by a course of dealing.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718, 1724, 1726–1735, 1737, 1743, 1762; Dec. Dig. § 432.*]

11. APPEAL AND ERROR (§ 732*)—ASSIGNMENT OF ERRORS—SPECIFICATION OF ERRORS.

An assignment that the court erred in overruling appellant's motion for a new trial, which contained 63 grounds, was too general.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3022–3024; Dec. Dig. § 732.*]

Appeal from District Court, Tyler County; A. E. Davis, Judge.

Action by the Houston Oil Company of Texas against J. B. Payne and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Hightower, Orgain & Butler, of Beaumont, and H. O. Head, of Sherman, for appellant. J. A. Mooney, of Woodville, and Jno. G. Logue, of Houston, for appellees.

McMEANS, J. This is an action of trespass to try title, brought by appellant, Houston Oil Company of Texas, against appellee J. G. Payne and others, as defendants, to recover about 600 acres of land known as the E. T. Ry. survey No. 7 in Tyler county. The defendants disclaimed as to all the land sued for except 160 acres described by metes and bounds in their answer, or in the alternative for 160 acres to be set apart to them so as to include their improvements. The answer included a plea of not guilty as to this 160 acres, and also a plea of the 10-year statute of limitation, and a further special plea to the effect that the Texas & Louisiana Land & Lumber Company, the common source, through its agent, John H. Kirby, about the year 1896 entered into a verbal agreement with defendant J. G. Payne that he, Payne, should render such assistance to the lumber company as he could in the sale of the land and the timber thereon, and should look after the timber on the lands of said company in the vicinity, keep trespassers off, protect from depredation, and generally oversee and take care of said lands and timber, and that for such services the defendant Payne should have, by fee-simple title, 160 acres of said survey No. 7, then and there agreed upon as the 160 acres of said survey adjoining the O. Hulett survey. They further alleged compliance in good faith by Payne of his part of the agreement, and the erection of permanent and valuable improvements by him on the land conveyed in reliance upon the contract. No evidence was introduced in support of the defendants' plea of limitation of 10 years, and this defense seems to have been entirely abandoned. The case was submitted to a jury on special issues, and upon the coming in of the verdict judgment was rendered in favor of the defendants for the 160 acres described by metes and bounds in their answer, and in favor of plaintiff for the balance of the survey, and from this judgment the plaintiff has appealed.

By its first assignment of error appellant complains of the refusal of the court to give its special charge instructing the jury peremptorily to return a verdict in its favor.

[1] By its first proposition under this assignment appellant asserts that the claim of parol sale being asserted through acts of an agent of the owner, it was necessary to show that such an agent had written authority. This contention cannot be sustained. Written authority is not necessary to enable an agent to bind his principal in an executory contract for the sale of lands. Huffman v. Cartwright, 44 Tex. 299; Marlin v. Kosmyroski, 27 S. W. 1044; Tyler Building & Loan Ass'n v. Forse, 59 S. W. 819.

[2] Appellant, being aware that the rule above stated is laid down in the two cases first cited above, argues that the first of these was decided before the adoption of article 624, Revised Statutes of 1895, which restricted agency in the matters of land

sales to those "thereunto authorized in writing," and that the Kosmyroski Case followed the Cartwright Case without reference to the statute. It contends that if, under the statute of frauds, no writing is necessary to authorize an agent to make a valid executory contract in writing relating to lands of his principal, the rule would clearly be different if the statute of frauds required written authority, and that the statute in question clearly requires a writing. The statute referred to is as follows: "No estate of inheritance or freehold, or for a term of more than one year, in lands and tenements, shall be conveyed from one to another, unless the conveyance be declared an instrument in writing, subscribed and delivered by the party disposing of the same, or by his agent thereunto authorized by writing." This article is applicable to the owner as well as the agent; and, if appellant's contention is correct, a parol sale by an owner could not be enforced by the purchaser under any circumstances. We think this contention is untenable.

[3] By a second proposition under the first assignment appellant asserts that: "The Texas & Louisiana Land & Lumber Company being a corporation, the evidence is insufficient to show authority in the witness Kirby, by parol contract and his conduct thereunder, to divest it of title to land." The Texas & Louisiana Land & Lumber Company is the common source of title. The undisputed evidence shows that the appellant acquired the legal title to all of survey No. 7 by deed dated July 30, 1901, which must prevail unless the defendants have shown an equitable title to have been acquired by defendant Payne under a verbal sale made by him with John H. Kirby, agent for the lumber company prior to that date. At the risk of being tedious we here set out the testimony of Kirby in regard to the authority possessed by him in the management and disposition of the lumber company's lands:

"I was connected with the Texas & Louisiana Land & Lumber Company from the time it was chartered under the laws of the state of Maine, in about the year 1886 or 1887, until its dissolution about the year 1901. I was one of the original promoters of the company, and afterwards became largely interested in its capital stock. Immediately upon its organization I was engaged as land agent and attorney in Texas, representing it in all local matters connected with its titles, doing all of its legal work, purchasing lands for its account, and selling the timber thereon for its account. At a later period, and about the year 1889, 1890, or 1891, its manager in Texas, Maj. Clarendon Harris, having died, I, in addition to my duties as land agent and attorney, succeeded to the duties of manager of its property, business, and affairs. * * * I continued in my capacity as manager and attorney from 1889, 1890, or 1891 until the dissolution of the company

in 1901. The company had no representative in Texas other than myself after the death of Maj. Harris, already testified about. * * * I was land agent and attorney * * * from the time the company was organized in 1886 or 1887 until the death of Maj. Harris. * * * Immediately upon his death I was appointed by the company to succeed him, and continued in such capacity until the dissolution of the company in 1901. * * * Its corporate headquarters were in Portland, Me. Its business headquarters in Boston, Mass., and its Texas headquarters in my office, first at Woodville, Tyler county, Tex., from the time of its organization until 1890, and from 1890 to 1901 at my office in Houston, Tex. The corporate officers of the Texas & Louisiana Land & Lumber Company never at any time changed. The directors were, at the time of organization, and in all subsequent years by re-election, Edward Ellerton Pratt, Horatio R. Fletcher, and Nathaniel D. Silsbee, all of Boston, Mass. The president was Nathaniel D. Silsbee, the treasurer was H. R. Fletcher, and I was at all times land agent and attorney. Maj. Clarendon Harris, also of Boston, held the title of manager from the incorporation of the company in 1886 or 1887 until the time of his death in 1889 or 1891. After his death I succeeded to his duties. I did hold the position of general manager of said company. I have already stated that it began on the death of Maj. Harris and ended when the company was dissolved. * * * The duties of the position of general manager were such as the title signifies, and as are usually exercised by a manager of a corporation. I was the only representative in Texas, and had full control of all of the properties, business, contracts, operations, and all that sort of thing in this state. I represented the interest of the company in Texas, from the time of its organization up to the time of its dissolution, as completely as though I had been the sole officer of the corporation. I always reported my action to the board, but I cannot recall a single instance when that action did not meet with their full approval.

"The company was engaged in buying and selling timber and timber lands in Tyler county, Tex., and in other counties of Texas, from the year 1886 or 1887 until the latter part of the year 1901. About July, 1901, it sold its land to the Houston Oil Company, and, after collecting its bills for timber previously sold, retired from business, and was regularly dissolved under the laws of the state of Maine. I was present at Portland, Me., and aided in the passage of the resolutions necessary to the dissolution and in the winding up of its affairs. * * * We sold timber to a number of the milling concerns operating in that county, and among them the Village Mills Company, the Warren Lumber Company, the Seneca Lumber

Company, the Summit Lumber Company, the Yellow Pine Lumber Company, the Southwestern Lumber Company at Mobile, and several firms and partnerships. * * * I had everything to do with the timber lands belonging to the Texas & Louisiana Land & Lumber Company and located in Tyler county, as well as in other counties in Texas. I bought them for the company, employed cruisers and other experts necessary to determine the quantity of the timber before the purchase was made, passed on the titles as attorney for the company, and arranged every detail in connection with the purchase. Thereafter, as the agent of the company, I represented its lands, negotiated sales of the timber, protected them against trespassers and squatters, and did all other things that were done in taking care of the properties, including the rendition of the lands for taxes and the payment of the taxes. * * * I had full authority from the Texas & Louisiana Land & Lumber Company to make any agreement with any person in respect to any of their titles which in my business or legal judgment was best for the company's interests. * * * I had full authority to employ any persons to look after the timber of said company and pay them such compensation as I saw proper. The directors and officers in Boston left the whole matter to my business and legal judgment. * * * I cannot testify as to the number of instances in which we gave squatters the land, reserving to ourselves the timber, where the squatters were asserting claims to the lands owned by the company. In those days we did not regard the fee title to lands as of much consequence. Possibly $1 per acre represented their value and where the squatter was willing to concede to us the timber, it was cheaper to make such arrangement than to litigate him and take the chance of losing any part of what we regarded as practically the whole value of the land, to wit, the timber. * * * I have already answered that I had full authority in all this period to represent the Texas & Louisiana Land & Lumber Company most fully in Tyler county in respect to its interests in Tyler county as well as elsewhere. Maj. Harris, a Boston man, was engaged in stock raising in Tyler county, and even though he held the title of manager of our land and lumber company, he left substantially everything to me, and no other representative of the Texas & Louisiana Land & Lumber Company was ever in Texas, except one time in 1893 or 1894 I brought with me from Boston our president, Nathaniel D. Silsbee, who spent a few weeks with me in Texas. * * * I did recognize that Mr. Payne was entitled to a portion of this tract of land, and my impression was that the Texas & Louisiana Land & Lumber Company had made him a conveyance. I did not know that we had not done so until the matter was brought to my attention recently, that is, within the past three or four years. I recognized his right to it because of my understanding with him about which I had already testified. * * * I cannot detail all the transactions had in this period of 14 years of active business, and relating to more than 100,000 acres of lands in Tyler, Polk, Jasper, Newton, Hardin, and other East Texas counties. We had at different times during this period probably 100 men in our employ looking after our lands, scaling our logs, collecting for trespasses, negotiating and adjusting with squatters, and in every instance where a squatter was willing to enter into an arrangement under which he would not claim the timber, we donated to him an amount of land in settlement of his claims. I do not remember ever to have litigated a squatter except where he refused to recognize my company's right to the timber."

[4] It is not necessary to show in every case that the agent who acts for a corporation was empowered to do so by a resolution of the board of directors entered of record; but as was said by the Supreme Court in Fitzhugh v. Land Company, 81 Tex. 306, 16 S. W. 1078, "the directors may confer the authority by by-law or resolution, or probably by a vote not entered of record," or as said by this court in Tyler Building & Loan Association v. Forse, 59 S. W. 818, such authority may be shown by a course of dealing in which the acts of the alleged agent were known and recognized by the party sought to be charged, such party receiving the benefits of the agent's acts, and permitting him to continue so to act. See, also, Collins v. Cooper, 65 Tex. 461; Hamm v. Drew, 83 Tex. 77, 18 S. W. 434.

By a third proposition under the first assignment appellant urges that: "In order to avoid the statute of frauds as to land sales, whether as plaintiff or defendant, the evidence of the contract and essential equities ought to be satisfactory and convincing, and should show a definite agreement, ascertaining the land and specifying the obligation of the vendee, followed by exclusive possession, originating under and taken in pursuance of the contract, and accompanied by improvements constructed in reliance on the contract, or by other elements of estoppel, and that lack of any of these essentials defeats the supposed vendee's claim."

[5] We think that the record shows that all the essential elements required to be proved to establish an equitable title under a parol sale of the land was proved on the trial. On this issue the following fact findings are warranted: During 1896, defendant Payne owned the O. Hulett survey in Tyler county, but was living upon the G. I. Miller, which adjoined it. Previously Payne had inclosed about an acre of the E. T. Ry. survey No. 7. The following map will illustrate

the situation of the three tracts on the ground and the contention of the parties:

Kirby, as the agent of the lumber company, ascertaining that Payne was claiming survey No. 7, or a part of it, made a verbal contract with him, by the terms of which Kirby for his company agreed to give Payne 160 acres of survey No. 7 adjoining the O. Hulett survey, to take in the "boot-shaped piece," and run back far enough to make the 160 acres, in consideration, as Kirby testified, that Payne "would act as a sort of scout and see that no timber was cut upon the tract of land, or other tracts of land, that we owned in this neighborhood, and see that ·no trespassing was committed thereon, and report to me any such trespassing, or any effort to inclose our lands," and "not at any time assert any claim or interest in the timber on any part of section No. 7." Kirby further agreed, as he testified, "that when the company got the timber from the land, they would make him a proper deed for a certain part of the section, including his improvements, whatever they were." Acting on the faith of this agreement, Payne continued in possession of the land, and made permanent and valuable improvements on that part of survey No. 7 awarded to him in this suit, and performed his agreement with Kirby to look after the lands and keep off trespassers, and in all other respects. In 1901 the Texas & Louisiana Land & Lumber Company sold the entire survey No. 7 to the appellant, Houston Oil Company of Texas, and at the time of such sale Payne was in possession of the 160 acres claimed by him, and his possession and the character of the improvements theretofore placed thereon by him and then ·existing was of such character as to put the oil company upon notice of his claim, or upon inquiry, which, if pursued, would have led to a knowledge of Payne's title. After its purchase, the oil company, or its assigns, cut the timber from the tract claimed by Payne without protest upon his part. No deed was ever made by the lumber Company, or its successor in title, conveying to Payne the 160 acres in suit. As before stated, Kirby, as agent for the lumber company, was shown to have had authority from his principal to make the contract. The land at the time of the verbal agreement between Kirby and Payne was worth about $1 per acre, and the value of the improvements placed thereon by Payne on the faith of the agreement were permanent in character, and exceeded in value the value of the land. Payne continued in possession from the date of the contract until the institution of this suit, a part of the time through tenants. The 160 acres described by metes and bounds in his answer included the "boot-shaped" part of the section, and ran far enough back to take in the 160 acres, and the land that was awarded to him was run out in this manner, and the jury found it to be a fair, just, and reasonable location thereof. We think that the evidence fully meets every test necessary to support the judgment rendered in favor of appellees. Wells v. Davis, 77 Tex. 636, 14 S. W. 237; Wooters v. Hale, 83 Tex. 563, 19 S. W. 134; Murphy v. Stell, 43 Tex. 123; Willis v. Matthews, 46 Tex. 482; Wooldridge v. Hancock, 70 Tex. 21, 6 S. W. 818. In Wooters v. Hale, supra, it is said: "A parol gift of land will be sustained and enforced when clearly proved, and when possession has been taken and valuable improvements made on the faith of it."

[6] But appellant argues that the possession of the donee or purchaser must be exclusive in order to maintain his title under a verbal sale and the erection in good faith · of permanent and valuable improvements, and contends in effect that no such exclusive possession was shown in this case, for the reason that Kirby, by the terms of the verbal contract, retained the right to take the timber off of the land conveyed, and that he thus retained possession for this purpose. It was agreed, as a part of the consideration for the purchase and sale, that Payne should not claim the timber on the land, and the evidence shows that this part of the contract was performed by Payne because the timber was taken by the vendee of the common source without protest on his part. We think that, in permitting the appellant to take the timber as he did, appellee did not yield possession to it of the land, the subject of the contract between Kirby and Payne, but rather that when appellant entered upon the land for the purpose of taking the timber, its possession was subordinate to that of appellee (Babcock v. Lewis, 52 Tex. Civ. App. 10, 113 S. W. 584), and this did not affect appellee's title to the land acquired under the contract of sale and the making

of valuable and permanent improvements thereon. The assignment is overruled.

The second, third, fourth, and fifth assignments are predicated upon the action of the court in refusing to sustain appellant's special exceptions to defendants' answer. We have carefully examined the answer in connection with the special exceptions urged against it, and have concluded that the court did not err in the action complained of.

[7] After the plaintiff, appellant here, had made its announcement of ready for trial, the defendants asked for and obtained leave to file, and did file, their second amended original answer. Appellant then moved the court to strike out the amended answer on the ground that it raised new and additional issues which were not tendered in the former answer, and which appellant did not anticipate would be raised, and that it was not prepared to meet the same. The motion being refused, appellant then filed its motion for a continuance, setting up as grounds therefor that the prior answer raised only the issue of express authority of John H. Kirby to enter into the agreement with Payne, but the amendment then filed set up additional issues of which appellant had no notice, and which it did not anticipate would be raised, and which it was not prepared to meet. The refusal of the court to strike out the answer and to grant the motion for a continuance is made the basis of appellant's sixth assignment of error.

The first amended original answer alleged that John H. Kirby had express authority from the Texas & Louisiana Land & Lumber Company to execute and enter into the agreement with Payne. The only additional allegations in the second amended answer on this issue were, in effect, that Kirby had the implied and apparent authority to make the agreement, and that the appellee Payne reasonably believed that Kirby did possess such authority, and acted upon such belief in making the agreement, and, further, that the Texas & Louisiana Land & Lumber Company had held out Mr. Kirby as possessing such authority, and had ratified and approved the agreement which he made. We think the action of the court here complained of, if erroneous, was not such an error as to require a reversal. It was alleged that John H. Kirby had express authority to execute the agreement in question, and this allegation was proved by Kirby himself. This being true, it was immaterial what his implied and apparent authority was, or whether Payne believed that Kirby possessed such authority and acted upon that belief, or whether Kirby's principal held him out as possessing such authority and had ratified and approved the agreement. The assignment is overruled.

[8-10] The seventh assignment of error complains of the action of the court in admitting certain portions of the testimony of John H. Kirby, over its objections. The testimony objected to was as follows: "I had full authority from the Texas & Louisiana Land & Lumber Company to make any agreement with any persons with respect to any of their titles which in my business or legal judgment was best for the company's interest." And again: "The duties of the position of the general manager were such as the title signifies, and as are usually exercised by the manager of a corporation. I was the only representative in Texas, and had full control of all of its properties, business, contracts, operations, and all that sort of thing in this state." And again: "I represented the interest of the company in Texas, from the time of its organization up to the time of its dissolution, as completely as though I had been the sole officer of the corporation. I always reported my actions to the board, but I cannot recall a single instance when that action did not meet with their approval." The proposition under this assignment is as follows: "The mere conclusion of an employé of a corporation as to the extent of his authority to convey land is not competent nor admissible evidence thereof, over objection that there is shown no record or recital of corporate action upon which to base such conclusion." It is not true that the authority of an agent of a corporation cannot be shown except by a record or recital of corporate action, but, as said by our Supreme Court in Fitzhugh v. Land Company, supra, the authority may be conferred by a vote of the directors not entered of record, or by a course of dealing in which the acts of the alleged agent were known and recognized by the party sought to be charged, as said by this court in Tyler, etc., Loan Ass'n v. Forse, supra. None of the testimony objected to was the conclusion of the witness, except the statement that the duties of the general manager were such as the title signifies, and as are usually exercised by the manager of a. corporation. The other testimony objected to were statements of fact, and, together with other like statements of the witness, were sufficient to authorize the finding that the witness as agent of the lumber company was authorized to execute the agreement he made with appellee. It does not appear to us that his statement as to the authority of a general manager, as such, although the conclusion of the witness, could have any greater, or as great, weight with the jury in determining the extent of his authority as his positive statements, which were not conclusions, that such authority existed in him; and therefore the admission of that part of his testimony was harmless.

[11] The eighth and last assignment complains that the court erred in overruling appellant's motion for a new trial. Sixty-three grounds were urged in the motion. That this assignment is too general to authorize our consideration of it is too well settled to require citation of authority.

We find no reversible error in the record and the judgment of the court below is affirmed.

Affirmed.