BALDWIN v. DREW. (No. 181.)

(Court of Civil Appeals of Texas. Beaumont. May 18, 1917. Rehearing Denied May 30, 1917.)

1. COURTS ⬸155—JURISDICTION OF DISTRICT COURT—SUIT ON VENDOR'S LIEN.

In suit on a promissory note for $300, 6 per cent. interest, and 10 per cent. attorney's fees. and to foreclose a vendor's lien, where defendant filed a cross-action against plaintiff for $1,100 for taxes, $200 in money that defendant had paid plaintiff, and also a suit to cancel the deed from plaintiff to defendant, etc., the district court had jurisdiction, though plaintiff voluntarily dismissed the part of his petition seeking to establish a vendor's lien.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 378, 402½.]

2. APPEAL AND ERROR ⬸1190—MANDATE— COURT OF CIVIL APPEALS—REASONS FOR JUDGMENT—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914 art. 1637, providing that in cases where the judgment of the trial court shall be reversed and the case remanded the Court of Civil Appeals shall state its reasons for the judgment, judgment of a Court of Civil Appeals need not state in the mandate the reasons for the judgment, nor is it mandatory that a certified copy of the opinion of the court accompany the mandate.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4645.]

3. CONTINUANCE ⬸11—JOINDER OF CODEFENDANT—TIME FOR APPLICATION.

In suit on a promissory note and to foreclose a vendor's lien, there was no error in overruling the defendant's motion for continuance to perfect service upon his codefendant, made a party by the second amended original answer, where the cause was filed July 12, 1912, but the codefendant was not sought to be made a party by filing amended answer until May 24, 1916.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 19–24.]

4. DEEDS ⬸203—EVIDENCE—COMPETENCY OF GRANTOR.

In suit on a promissory note to foreclose a vendor's lien, the court properly admitted plaintiff's testimony, to the effect that a third person executed to plaintiff the deed to the land in controversy, that the third person was then a person of sound mind, who was confined in an insane asylum on account of being an habitual drunkard, and that at the time he was rational and fully understood the contents of the deed which he executed to plaintiff, and that the physician at the insane asylum gave him a certificate to such effect; the evidence being admissible to show that the third person was not insane as matter of fact.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 602, 604–611.]

5. EVIDENCE ⬸461(2)—PAROL EVIDENCE— NATURE OF DEED.

Such evidence was also admissible as a circumstance to show that the ambiguous deed from plaintiff to defendant was a quitclaim deed, because defendant knew the condition of the party who conveyed to plaintiff, and knew the claim of insanity asserted on trial by defendant.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2130.]

6. EVIDENCE ⬸461(2)—PAROL EVIDENCE— NATURE OF DEED.

In such suit, letters and ex parte statements of third persons to show that when plaintiff's grantor executed the deed to plaintiff the grantor was in mental condition to know the nature of any document he might have signed were admissible to show that the deed from plaintiff to defendant was a quitclaim deed, and to show that defendant knew the condition of plaintiff's grantor, and knew the claim of his insanity, where the court charged the jury to consider the letters only for the bearing they might have on the character of the transaction between defendant and plaintiff at the time of execution of the deed, and that if defendant had never seen the letter at that time the jury should not consider it.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2130.]

7. EVIDENCE ⬸318(2)—HEARSAY.

In suit on a note and to foreclose a vendor's lien, the court properly excluded as hearsay a letter from plaintiff's grantor, not a party, to defendant, plaintiff's grantee, offered in evidence by defendant to show that he had written notice from plaintiff's grantor that the grantor was claiming an interest in the land in controversy.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1194.]

8. EVIDENCE ⬸461(2)—PAROL EVIDENCE— CHARACTER AS CONVEYANCE OR QUITCLAIM.

In determining the intention of the parties to a deed as to whether the instrument conveyed the land or merely chance of title, the jury could consider oral evidence admitted in the case in arriving at their conclusion, and were confined to consideration of the deed itself.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2130.]

9. TRIAL ⬸251(2)—SUBMISSION OF ISSUE— PLEADING.

In suit on a promissory note and to foreclose a vendor's lien, where the pleadings authorized the court to determine whether or not defendant was bound to pay back taxes, and defendant claimed he was not to pay them, and did not buy from plaintiff a quitclaim title, and that under the deed to him from plaintiff there was an obligation on plaintiff to pay back taxes, the court properly submitted to the jury the issue whether it was understood between plaintiff and defendant that defendant was to assume the payment of the taxes due on the land; the testimony being sufficient.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 589.]

10. TRIAL ⬸251(2)—SUBMISSION OF ISSUE.

Where the whole issue was whether plaintiff's deed to defendant was a quitclaim deed or a conveyance, the court properly refused to submit defendant's special issue whether defendant knew when he purchased from plaintiff that plaintiff's grantor was insane and in an insane asylum when he conveyed to plaintiff.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 589.]

11. TRIAL ⬸350(4)—SPECIAL ISSUE.

The court properly refused to submit a special issue as to the amount of back taxes on the date of plaintiff's conveyance to defendant, where the amount could have been mathematically ascertained.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 829.]

12. APPEAL AND ERROR ⬸733—ASSIGNMENT OF ERROR—GENERALITY.

An assignment that the court erred in entering judgment for plaintiff on the jury's ver-

dict for the reasons set forth and fully stated in defendant's bill of exceptions "to the court entering judgment for the plaintiff on the verdict of the jury" was too general.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3025–3027.]

13. APPEAL AND ERROR ☞1060(1)—HARMLESS ERROR—ARGUMENT OF COUNSEL.

In suit on a promissory note and to foreclose a vendor's lien, argument of plaintiff's counsel *held* not reversible error, in view of the facts that the conclusion reached by the jury was amply supported by the record, that the court admonished counsel and instructed the jury that they should not consider certain language of the speaker, and that no injury was shown to have resulted, as the preponderance of the testimony was in favor of the verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135.]

Appeal from District Court, Liberty County; J. Llewellyn, Judge.

Suit by Tom M. Drew against Jacob C. Baldwin. From a judgment for plaintiff, defendant appeals. Affirmed.

See, also, 180 S. W. 614.

Baldwin & Baldwin, of Houston, for appellant. Marshall & Harrison, of Liberty, for appellee.

BROOKE, J. This was a suit instituted on the 18th day of July, 1912, by Drew against Baldwin on a promissory note, and foreclosure of a vendor's lien on 1,579 acres of land. Prior to the last trial, a few days, the defendant, Baldwin, made Tom Moore a party. The defendant, Baldwin, did that in his second amended original answer, after having tried the case one time in the district court and appealed same to the Court of Civil Appeals. The court did not pass upon appellant's prayer to have the plaintiff make Moore a party to the suit, which defendant asked to have done in his first amended answer before the appeal. On the second trial, the defendant, Baldwin, filed an amended answer, in which he admitted the execution of the note, and for various reasons set up failure of consideration, and asked that Tom Moore be made a party, and especially to cancel the deed executed by Drew, plaintiff, to Baldwin, and also sued to recover the $200 cash payment that Baldwin had made, and 6 per cent. interest on same from the date of the deed, February 12, 1910. Defendant also sued in reconvention for $1,195.55 for back taxes. Defendant's answer concluded as follows:

"In the event this court should, for any reason, hold that this defendant is not entitled to the relief above prayed for, then he prays judgment against the defendants, Tom Moore and Tom M. Drew for the land mentioned and described in the plaintiff's petition, and fully described in Exhibit 'A' attached thereto. And that all the right, title, and interest that said Tom Moore has to the said land, if any, be decreed to this defendant, subject only to such liens, if any, that might be found to exist against the same by reason of plaintiff's suit herein."

He prayed for such other relief, in law and equity, to which he might be entitled. After the defendant had filed his second amended original answer, which was filed the 24th day of May, 1916, and after the defendant had made a motion to continue on the ground that Tom Moore had not been served ten days, and when the case was called for trial on June 1, 1916, the plaintiff waived, in open court, and withdrew that portion of his pleading that sought a foreclosure on the 1,549 acres of land, and sought a personal judgment alone against the defendant, Baldwin. The defendant, Baldwin, did not in any manner or form withdraw any of his cross-action, pleas in reconvention, or prayer to have the deed canceled. Upon the court's charge, the jury found a verdict favorable to the plaintiff, on which the court rendered judgment on June 1, 1916. The charge of the court, which was upon special issues, was as follows:

"Gentlemen of the Jury: This case will be submitted to you on special issues, by which is meant that I will hereinafter propound to you certain questions which you will answer as you may find from the evidence, as may be hereinafter indicated. A separate piece of paper will be furnished you on which to write your answers as may be indicated, and a place for your foreman to sign; this you will return into court as your verdict in this case.

"Question No. 1: Did Tom Drew intend to convey and J. C. Baldwin to acquire by said deed dated February 12, 1910, only such title as Drew might have in the land or the mere hazard of chance of title? (Answer Yes or No.)

"Question No. 2: Was it understood and agreed by and between the plaintiff and the defendant, at the time of the execution and delivery of the deed and note, that the defendant, Baldwin, was to assume the payment of the taxes due against the land mentioned and described in said deed? (Answer Yes or No.)

"The burden of proof in this case is upon the plaintiff, Tom Drew, to establish the affirmative of the questions above propounded.

"By the term 'preponderance of the evidence' is meant the greater weight of credible testimony.

"You are the sole and exclusive judges of the facts provided, the credibility of the witnesses, and the weight to be given to their testimony."

The first assignment of error is as follows:

"This being a suit on a promissory note for $300 and for 6 per cent. interest and 10 per cent. attorney's fees, the amount claimed was not within the jurisdiction of the district court. Only the allegations in plaintiff's petition seeking to establish and foreclose a vendor's lien upon the land conveyed give jurisdiction. Plaintiff having voluntarily dismissed that part of his petition, and having expressly waived the same, this left the court without any jurisdiction to hear and determine the case, and the judgment rendered by the trial court is void. The fact that the defendant filed a cross-bill seeking to have the deed and note canceled and seeking a personal judgment against the plaintiff for the sum of $200, together with 6 per cent. interest, did not give the district court jurisdiction to hear any issue in the case; and, upon the plaintiff filing this waiver and the court dismissing Tom Moore as a party to the suit, it left the court without jurisdiction."

---

[1] The defendant had filed a cross-action against plaintiff, Drew, for $1,189.55 for taxes, $200 in money that defendant had paid plaintiff, and also a suit to cancel a deed from Drew to Baldwin, and, having sought a cancellation of the contract as between him and Drew, which was for 1,500 acres of land, and a personal judgment against Drew for $200, and, further, as before said, prayed that in the event the court should find that Drew should recover, he should have a judgment against Drew to satisfy any incumbrance, including the claim of the state of Texas and the county of Liberty for taxes, 'which amount was $1,189.55.

It occurs to us that there is no merit in the contention of appellant that the district court had no jurisdiction of the cause, and the first assignment is therefore overruled.

The second assignment of error is as follows:

"The court erred in overruling the 'plea in abatement' filed by the defendant, Jacob C. Baldwin, on June 1, 1916. The error of the court in this respect is fully pointed out and reflected by the defendant's bill of exception No. 1, which is here referred to and made a part hereof."

[2] There was no error with reference to the mandate from the Court of Civil Appeals, for the reason that the same had been duly returned to the district court of Liberty county, Tex., and recorded and filed, as the law required. The record does not show affirmatively that the lower court had a copy of the opinion of the Court of Civil Appeals. However, it is our opinion that the law does not require the judgment of the Court of Civil Appeals to state in the mandate the reasons for its judgment, nor is it mandatory that a certified copy of the opinion of the Court of Civil Appeals accompany the mandate. Article 1637, Vernon's Sayles' Tex. Civ. St. We are of opinion that there is no merit in the assignment, and the same is overruled.

In the third assignment, complaint is made as follows:

"The court erred in overruling the defendant's motion for continuance for the purpose of perfecting service upon the defendant, Tom Moore, who was made a party defendant herein by the second amended original answer filed by the defendant, Jacob C. Baldwin, and upon whom citation and a copy of said answer had been duly and legally served; and the court erred in this same holding and ruling in holding 'that Tom Moore is neither a necessary nor a proper party to this suit in view of the plaintiff waiving his lien on the land in open court, and that it is not necessary for him to be made a party hereto in order that the rights of either party hereto might be better protected,' and the court erred in dismissing from the defendant's answer the said Tom Moore, and in overruling said motion for continuance. The error of the court in this respect is more fully reflected by the defendant's motion to continue, and the defendant's bill of exception taken to the court's action in overruling said motion for continuance, each of which is referred to for the purpose of more fully explaining this assignment of error."

[3] Moore was sought to be made a party by filing an amended answer on the 24th day of May, 1916, when said cause was filed on the 12th day of July, 1912. There is no merit in the assignment, and it is therefore overruled.

The fourth assignment is as follows:

"The court erred in permitting the plaintiff to adduce in evidence the oral testimony of Tom M. Drew, and other like oral testimony, for the purpose of explaining or showing what was the intention of said Tom M. Drew as to whether or not he intended to convey the land described in said deed, or the mere chance of title to defendant, Jacob C. Baldwin, for the reason that said deed is not ambiguous and is not couched in uncertan terms, but the intention of said parties is not admissible for the purpose of varying the terms of said written contract, or of showing another and different intention than that expressed in said instrument. The error of the court in this respect is more fully reflected by the defendant's bill of exceptions taken at the time to the action of the court in admitting said testimony, and for the purpose of better explaining this assignment of error, reference is made to said bill of exceptions."

This case has been before this court before, and is reported in 180 S. W. p. 614. It was held in said decision that the deed from Drew to Baldwin, upon its face, was ambiguous enough to admit evidence for the purpose of showing it was a quitclaim deed, and certainly the testimony about which appellant complains under this assignment was admissible on this issue, which said issue was specifically submitted to the jury in the court's charge. A careful examination of the assignment convinces us there is no merit in same, and therefore it is overruled.

By the fifth assignment of error, complaint is made as follows:

"The court erred in admitting in evidence the evidence of Tom M. Drew, to the effect, in substance, that Tom Moore executed to him the deed to the land in controversy in 1905; that said Tom Moore was then a person of sound mind; that he was confined in an insane asylum at Terrell on account of being a habitual drunkard, and that at that time he was rational and fully understood the contents of the deed which he executed to said Tom M. Drew; and that the physicians at Terrell gave him a certificate to this effect. The error of the court in this respect is reflected from the objections made to said testimony, and which testimony contradicted the record of conviction of lunacy by a court of competent jurisdiction and a judgment of a court of competent jurisdiction appointing a guardian for said Moore; such oral testimony was not admissible."

[4, 5] It seems that said evidence was admissible to show, as a matter of fact, that Tom Moore was not insane at the time he executed the deed to Tom Drew, and with reference to the letters of John S. Turner and T. J. Haizlip, the plaintiff testified that he had delivered these letters to the defendant, Baldwin, before the deed was made from him to Baldwin, and that Baldwin had read and seen said letters. We think it was also admissible as a circumstance to show that the deed from Drew to Baldwin was a quitclaim deed, because he (Baldwin) knew the condition of the party who conveyed the

land to Drew, and knew the claim of insanity which defendant now asserts. The said assignment is therefore overruled.

The sixth assignment of error is as follows:

"The court erred in admitting in evidence the letters and ex parte statements of John S. Turner and T. J. Haizlip for the purpose of showing that at the time Moore executed the deed to Tom M. Drew that said Tom Moore was in mental condition to know the nature of any document that he might have signed on that occasion (meaning that he had sufficient mental capacity to know the contents of the deed from Tom Moore to Tom M. Drew) over the objections of the defendant, which objections were, in substance: (a) That said testimony was ex parte unsworn statements of said Turner and Haizlip, and was not admissible for any purpose; (b) that said testimony was hearsay."

[6] As before said, we are of opinion that the admission of these letters was a circumstance to show that the deed from Drew to Baldwin was a quitclaim deed, and to show that Baldwin knew the condition of the party who conveyed the land to Drew, and knew the claim of insanity, as above stated, and, besides, the court instructed the jury not to consider the letters but for one purpose, as follows:

"The letters will be admitted in evidence before you for such bearing, if any, it may have on the character of the transaction between Baldwin and Drew at the time of the execution of the deed. If you find as a fact that Judge Baldwin had never seen this letter prior to that time, you will not consider it for any purpose."

Under the circumstances, we believe there was no error in this action of the court, and the assignment is overruled.

The seventh assignment of error is:

"The court erred in excluding from the jury the letter from Tom Moore to the defendant, Jacob C. Baldwin, dated August 26, 1912, which was offered in evidence by the defendant for the purpose of showing that he had written notice from Tom Moore that he (Moore) was claiming an interest in the land in controversy, and for the purpose of further showing, in connection with the testimony of said Baldwin, that he had notice from said Moore that Moore was claiming the land in controversy and objected to this defendant paying Drew the remainder of the unpaid purchase money for said land."

[7] Moore was not a party to the suit, and the record reflects that the testimony excluded was hearsay. The issue appeared to be before the jury whether Baldwin accepted a quitclaim deed or chance of title, and the letter was written after the deed from Drew to Baldwin was executed. What has been said here applies to the eighth assignment of error. Both of said assignments are overruled.

The ninth assignment of error is as follows:

"The court erred in his general charge to the jury, wherein he submitted to the jury the following question, to wit:

"Question No. 1: Did Tom Drew intend to convey and J. C. Baldwin to acquire by said deed dated February 12, 1910, only such title as Drew might have in the land, or the mere hazard or chance of title? (Answer yes or no.)"

The cause having been heretofore on appeal to this court, and the deed having been interpreted by this court, and this court having held that evidence was admissible to show whether or not it was a quitclaim deed, it seems that the trial court was following said opinion of this court heretofore rendered, and was submitting to the jury, in concrete form, the legal questions heretofore before this court in the matter of said former appeal, the question being squarely submitted to the jury, and it being left to their consideration to say what was the intent of Baldwin and what was the intent of Drew with reference to whether the conveyance was a title or a chance of title. Therefore, in our opinion, there is no merit in this assignment, and the same is overruled.

By the tenth assignment of error, the action of the trial court is challenged as being error in refusing to give to the jury defendant's special charge No. 1, which is as follows:

"The deed from Tom M. Drew to Jacob C. Baldwin is sufficient on its face to show that it was the intention of Drew to convey to Baldwin the land therein described, and not the chance of title."

The law, as formerly decided on the first appeal, is in conflict with the appellant's contention under this assignment.

The eleventh assignment of error challenges the action of the court as being error in refusing to give to the jury special issue No. 4, which was as follows:

"In determining what was the intention of the parties, you must arrive at that intention from the instrument or deed itself when considered as a whole, and you cannot consider any oral evidence admitted in this case in arriving at your conclusion on this point."

[8] We think our holding on this proposition during the former appeal was correct, and, the same being contrary to the contention of appellant under this assignment, the same is overruled.

By the twelfth assignment of error, complaint is made that the court erred in submitting to the jury question No. 2, which was as follows:

"Was it understood and agreed by and between the plaintiff and the defendant at the time of the execution and delivery of the deed and note that the defendant Baldwin was to assume the payment of the taxes due against the land mentioned and described in said deed."

[9] The pleadings in this case authorized the court to determine whether or not the defendant, Baldwin, was bound to pay back taxes, and the defendant, Baldwin, claimed that he was not to pay them, and did not buy a quitclaim title, and that under the deed to him from Drew, there would be an obligation on Drew to pay the said taxes. It was right and proper to find out who was to pay the back taxes, as between Baldwin and Drew, so that, if it had been found by the verdict that the deed to Baldwin was not a quitclaim deed, who, then, was to pay the back taxes? There was sufficient testi-

mony to authorize the submission of this issue. There was no error in the action of the court on this matter, and the assignment is overruled.

By the thirteenth assignment of error, complaint is made that the court erred in refusing to submit to the jury defendant's special issue No. 3, which is as follows:

"Did, or did not, the defendant, Jacob C. Baldwin, know at the time he purchased the land from Tom M. Drew that Tom Moore was insane, and incarcerated in the insane asylum at Terrell, Tex., and was so incarcerated on the 10th day of May, 1905, the date of his deed to Tom M. Drew?"

[10] In our opinion, there was no error in the court refusing to give the requested charge. The whole issue in the case was: Was it a quitclaim deed or not that Drew made to Baldwin? And if it was a quitclaim deed, did Drew or Baldwin have to pay the taxes? The assignment is therefore overruled.

It is charged in the fourteenth assignment of error that the court erred in refusing to give to the jury special issue No. 5, which is as follows:

"What was the amount of unpaid taxes due against the land on the 12th of February, 1910, when Tom M. Drew conveyed the same to Jacob C. Baldwin? You will answer this question by stating the amount of taxes, if any, due and unpaid against the land up to the 1st of January, 1910. The error of the court in this respect is more fully reflected by the defendant's bill of exceptions to the court's refusal to give special charge No. 5, which is referred to and made a part hereof."

[11] If it had become necessary for the court to find the amount of taxes, the same could have been mathematically ascertained. The assignment is therefore overruled.

The fifteenth assignment complains that the court erred in entering judgment for the plaintiff on the verdict of the jury, for the reasons set forth and fully stated in defendant's bill of exceptions, "to the court entering judgment for the plaintiff on the verdict of the jury," which is here referred to and made a part hereof.

[12] Objection is made to the consideration of this assignment, because it is too general, and, in our opinion, the objection is well taken, and this conclusion is abundantly fortified by the decisions of the courts of this state. The assignment is overruled.

The sixteenth assignment is as follows:

"The court erred in permitting the plaintiff's counsel, Dan Harrison, to make and use in his argument before the jury the unjustifiable and unwarranted remarks made by him, to make use of indecent, profane, and vulgar language while arguing the case to the jury, which indecent, profane, and vulgar language was calculated to cause the jury to reach an erroneous conclusion on the issues submitted to them. Especially did the court err in permitting said counsel to tell the jury that by answering the questions yes they would be finding a verdict for Tom. M. Drew; and, while the court requested the counsel to cease from making use of such argument, and orally directed the jury not to consider the part of said argument which told them what would be the result of or

effect of their verdict if they answered the questions yes, yet this did not, and could not, remove from the minds of the jury the poison that had been shot into them by this character of argument, and this defendant now prays this honorable court to set aside the verdict of the jury and the judgment entered thereon on account of the argument of said counsel, which said argument is not supported or justified from the record, and is set out in full in this defendant's bill of exceptions taken at the time, which is here referred to and made a part hereof. The court having refused to grant this motion for new trial, the defendant then and there excepted to this action of the court, and assigns this action of the court as error."

The bill of exception in reference to this matter is as follows:

"Be it remembered: That on the trial of the above entitled and numbered cause that Messrs. Marshall & Harrison, a firm of lawyers of Liberty, Tex., represented the plaintiffs. That D. J. Harrison, one member of said firm, the district attorney of said judicial district, was a gentleman well known to the jurors of Liberty county, a good mixer and a man well known as being a forcible speaker and of considerable influence with the jurors. That after the testimony had been closed and after the argument for the defendant, said D. J. Harrison came to address the jury. Thereupon the defendant requested the court to have the stenographer to report his speech, as the defendant desired to except to all improper argument and to all argument that was not confined to the record. That thereupon the court stated to counsel that he would permit the speech to be reported, but that he would not permit the defendant or his counsel to interrupt the speaker by making objections to his speech during the progress of the same, but that the defendant could have a bill of exceptions covering the speech as a whole, as being improper and objectionable, and one calculated to have undue influence upon the jury, and also covering each particular part of said speech, or all such parts thereof as the defendant might desire to except to, and that the defendant could prepare his bill of exceptions and set forth these facts in his bill so that the reasons for not making special objections and exceptions to such parts of said speech, if any, at the time the same was made, might be fully reflected. With this understanding, and with this admonition from the court to the defendant's counsel, the said D. J. Harrison proceeded to address the jury as follows:

"Speech of D. J. Harrison to the Jury.

"Being as my speech is going to be taken down, I don't know whether it will be published in any of the daily newspapers or not, but he seems to be very anxious to get hold of one of my speeches and Marshall's, and I feel very much gratified that he has taken this opportunity of getting my speech, and I hope he will preserve it and file it away in the files of his office and some day he can go back and look at the speech and see what a great mistake he made by coming over to Liberty county and undertaking to put any such 'bull' over the jurors of this county.

"As I said, the judge is suffering with a severe case of the bellyache from this deal he pulled off in 1912, and it wouldn't surprise me if he don't have to be operated on before this thing is through. I don't believe in the history of all my experience of the last 8 or 10 years in practicing law that I ever saw a fellow that hated to give up as bad as the judge does in this case. He has belly-ached and talked to this jury about what trash and tommyrot we have introduced here, trying to make this jury believe that at the time they had this agreement over there, and he bought this land that Tom

Drew was undertaking to sell him that land—that it was the title he was undertaking to put into him, and that he was trying to convey him the 1,579 acres of land; in other words he wants this jury to believe that Tom Drew was warranting that title to him. This jury knows better. He is trying to make this jury believe and expects at your hands a verdict that would say Tom Drew had for $500 warranted a piece of land to him and assumed the taxes of $1,100. Look at Tom Drew; he don't look like a damn fool, and I don't believe he is, and I have known him for 15 or 16 years. The idea of trying to poke down this jury's throat a proposition of that kind; that Tom Drew would for $500 sell him 1,579 acres of land with $1,100 worth of taxes that he says was against it. If that is true, Tom Drew ought to be in the asylum instead of Tom Moore. You know that isn't so; that is all poppycock.

"There are only two questions for you to answer in this case and it is very easy to determine the facts. The first is, Did Tom Drew, according to this charge, intend to convey, and did Baldwin intend to acquire, by said deed dated February 12, 1912, only such title as Drew might have had? That is the only proposition. Did Tom Drew only intend to sell his claim on this land? Did Tom Drew only intend to sell him that which he had—what his rights were? That is the only question, and you know that is all Tom Drew intended to do, because do you think he would be fool enough to sell 1,579 acres of Liberty county land for $500? A little common horse sense is all a fellow needs to look at that proposition. That is one proposition, and the other is, Was it understood and agreed by and between the plaintiff and defendant at the time of the execution of the deed that the defendant was to assume the payment of the taxes due against the land? I am almost ashamed to argue that to the jury. I believe it is a reflection against the jury's intelligence to think a man that looks like Tom Drew wouldn't have any more sense than to take $500 for a piece of land and agree to pay $1,100 taxes against it. He would be some business man if he would do a trick of that kind. It is unbelievable, and I can't see how Judge Baldwin, with all his nerve, has got gall enough to believe any such stuff as that. He must think this jury hasn't got any horse sense; he must think there is no intelligence in this county; that you couldn't see a proposition of that kind.

"I am talking about those two questions, from the testimony in this case, Did Tom Drew intend to sell this land or his claim only? He says he did, and here is the letter he wrote the judge before he ever pulled the deal off when the judge was trying to get a power of attorney, and he introduced it; we didn't introduce it, but we had no objection: 'Replying to your previous letter concerning the Moore land will say I prefer to sell rather than give a power of attorney, and should you see your way clear to buy same make me your proposition for my claim.' My what? My claim. What do you think Tom Drew meant to do? Baldwin got that letter from him. Make me a proposition for my claim, and afterwards Drew was down there and made him a proposition and first asked him $2,000, and finally sold it for $500, 1,579 acres of land, 30 cents an acre. Ain't you ashamed of yourself, Judge, to come back up here and raise all this row about that $300 note; you ought to be ashamed of yourself; if I was shooting craps I would have shot them right. Go into this crap-shooting land game, gentlemen, then back up after the fellow won his money and say, 'Give me my money back, I ain't going to pay this crap-shooting debt of $300 I owe.' I'll be durned if I ever made a horse trade and rued back, and if I lost $300 playing poker, I would pay it like I owed a man for that much groceries. Tom Drew said, 'I will take $500 for my claim,' and Tom Drew

195 S.W.—41

said in this deed 'bargain, sell, convey and quitclaim.' It is in there, 'bargain, sell and quitclaim,' and the judge says that is no quitclaim deed. And it goes further, and says he warrants 'by, through and under me,' meaning only such title as he had. Do you believe Tom Drew intended to sell him that land and guarantee that title, or anything of that kind? Of course you do not, because there is nobody in the world that big a fool to sell that much land with $1,100 worth of taxes, for $500.

"Now what the judge said about Drew's testimony: We have got another man up there, a disinterested party; has nothing to do with this; no interest any way in the world; county judge of Polk county 4 years; and he says the judge said he was shooting craps when he bought it. What about him, Judge? He was there and heard the conversation when Tom Drew refused to take this man's check for the payment of the $200, but said you have got to get the money and put it in my hands. While the stenographer was out trying to get the $200, they walked in, and the judge said in this man Rowe's presence, who was a disinterested person, 'I sometimes shoot craps and play at games of chance and I may lose, but I have bought this stuff and I am not much out and I may win something.' Has Rowe lied too? What interest has he got? That shows beyond any question of doubt that at the time this deal was made that Drew only intended to convey what interest he had; in other words, the hazard of title. If he had the least bit of title there, Baldwin was to get it; and if he had much of a title, Baldwin was to get it: and if he didn't have anything, Baldwin got it. That is the intention of the parties. Not only that, but the note shows that.

"Then the judge said he didn't even know that fellow was crazy, and it wasn't ten minutes until he said he knew he had been crazy—just whipped right over and got on the other side of the fence. 'It is further expressly understood that the land herein conveyed has adverse claim against it, and that in the event said claim should be compromised or settled'—you know the judge knew there were claims against it. Tom Drew says he knew that his man was in the insane asylum, and says that Baldwin is the man that told him to get this instrument here from the authorities at Terrell, showing that this man Moore knew what he was doing at the time he deeded him the property while he was in the insane asylum. Baldwin knew it, and in his letter when he is writing up there to him wanting to get a power of attorney to clear it up Baldwin told him to get something to show that this man knew what he was doing when he executed this deed to him, and then he comes back down here and says he didn't know—didn't know that this man had been in the asylum, and then in a few minutes says he knew he had been, but thought he had got out. ' * * * In the event said claim should be compromised or settled or I should sell said land prior to the maturity of this note, then and in that event this should become due and payable at once.' That shows adverse claims there, and that Baldwin knew it. He was put on notice of it, and I want to tell you something else, even if he wasn't put on notice of it. If a fellow come up here on the street and had about a 16-hand horse, good fox trotter and clean-limbed, come fox trotting up there and wanted to sell you the horse for $10, what would you think about his title to it? Every durn one of you would say, 'I don't believe I want him.' When this man sold this title for $500, 1,579 acres in this county, you can't tell me, Judge, that you didn't know he didn't have a good title to it, and you can't tell me, nor you can't make this jury believe, I don't think, but what you knew you were only buying such claim as Tom Drew had, just like Tom Drew said in this letter to you, which you introduced in this case as evidence. You can't

poke it down me. Then if Tom Drew only sold such title as he had, and Baldwin only bought Tom Drew's claim, then answer question No. 1, Yes. Tom Drew is the plaintiff in this case, and Tom Drew is entitled, I say, at your hands, gentlemen, he is entitled to have this jury say that he only sold to Baldwin such title as he had, and his hazard of title, and that Baldwin only bought such title as he had, and he is entitled to have you answer question No. 1, Yes, and when you have answered question No. 1, Yes, the plaintiff in this case has won.

"By the Court: Don't consider the statement of counsel as to the effect of your answer to the question, gentlemen.

"By Judge Baldwin: The statement can't be withdrawn.

"By Mr. Harrison: I make this argument in answer to your proposition, when you said to this jury that it was their duty to answer that question, No. I want that to be incorporated in the bill of exception. There is no question about this case—there should be no question about it, absolutely none, because there is no question but what Drew sold his claim. There is no question but what his intention was to quitclaim and sell what title he had, and what interest he had, and there is no question but what Baldwin knew it at the time when he bought it, and it was the intention of the parties that he was to only acquire such title as Tom Drew had, and there is no question in the world but what Baldwin was to pay those taxes, because I say that is a reflection on any jury's intelligence to say a man that looks like Tom Drew wouldn't have any more sense than to sell that piece of land for $500 and then pay $1,100 worth of taxes, and in answer to Judge Baldwin's speech to this jury, when he said it was the duty of this jury to answer those questions, No, I say it is the duty of the jury to answer those questions, Yes. I repeat that because I believe the facts in this case warrant it. And in Tom Drew's testimony he tells you that they had this conversation, that they had talked time and again, talked to Baldwin, and discussed it with him a number of times before he made the deed, and on the day the deed was made that it was discussed—all those things were—and went on to say that Baldwin mentioned the fact that he would have to pay the back taxes. Rowe was there and heard it and said Baldwin said he was taking a chance, and I say to this jury that I believe it will not take you long to unravel this case. I believe you can see the true facts and the truth in this case, and when you have done that, I believe you will answer both those questions, Yes. And I thank you for your attention."

"Be it further remembered that the objections made to said speech and the exceptions reserved to the same were as set forth on the first page of this bill of exceptions.

"Second. That the speech as a whole is an improper one, and one that was calculated to have undue influence on the jury and cause them to reach an erroneous conclusion on the issues of fact submitted to them by the court, it being profane in character, abusive toward the defendant, bordering on vulgarity, and highly improper and unjustified from the evidence in the case.

"Third. The defendant specially excepted to that part of said speech which reads as follows: 'You can't poke it down me. * * * I say Tom Drew is the plaintiff in this case, and he is entitled to have this jury say that he only sold to Baldwin such title as he had, and his hazard of title, and that Baldwin only bought such title as he had, and he is entitled to have you answer question No. 1, Yes, and when you have answered question No. 1, Yes, the plaintiff in this case has won. * * * There is no question in the world but that Baldwin was to pay these taxes, because I say that it is a reflection on this jury's intelligence to say that a man who looks like Tom Drew wouldn't have any

more sense than to sell that piece of land for $500 and then pay $1,100 worth of taxes.' 'I say, it is the duty of the jury to answer these questions, Yes.' When this argument was made and the defendant objected to the same as being improper, the court then and there admonished the speaker, D. J. Harrison, and told the jury not to 'consider the statement of counsel as to the effect of your answer to the question'; the defendant insisted that the poison put into the mind of the jury by this character of speech should not be removed by any oral charge coming from the court, and that the speech as a whole was improper."

This bill of exception is qualified as follows:

"I, J. Llewellyn, judge of the district court of Liberty county, before whom the above case was tried, have had presented to me the above bill of exceptions with reference to the speech of D. J. Harrison after it had been presented to plaintiff's counsel who refused to approve the same; and, after examining the same, I find it to be correct, and I hereby approve the same as a correct bill of exceptions with reference to said matters, and order that it be filed as a part of the record in said cause, with the following qualifications: I did not deny defendant the right to interrupt the speaker. My recollection is that the speech was reported at Judge Baldwin's request as a matter of convenience in excepting thereto; the understanding was that the entire speech was to be regarded or excepted to without the necessity of interrupting the speaker for that purpose. I am inclined to think that Mr. Harrison is a good mixer, a forcible speaker of influence as stated, but decline to officially O. K. him in those particulars.
                                "J. Llewellyn, Judge."

[13] It is certainly a novel proceeding, perhaps the first of the kind that has been called to the attention of this court, that counsel takes exception to the speech of a man before the same has been uttered, being convinced, possibly, at the outset, that some improper language might be interpolated in the said speech. However, we have examined carefully the aforesaid speech of Mr. Harrison, together with all the inferences thereof, and we are of the conclusion that the said speech, in view of the fact that the conclusion reached by the jury is amply supported by the record, and in view of the further fact that the court admonished counsel and instructed the jury that they should not consider the language of the speaker, and in view of the further fact that no injury is shown to have resulted by reason of the preponderance of the testimony being in favor of the verdict as announced by the jury, we do not believe that the judgment of the trial court should be reversed upon this ground alone. We are not prepared to say that the bill of exception was taken at the proper time. It occurs to us that the practice of excepting to a man's speech before the same has been uttered, or presuming that something will be said that should not be and would be improper, is going rather far, and that the proper practice should be to not presume in advance that something would be said, but to wait until the words are uttered, and at that time, which is the proper time, call the court's attention to the language used, and request that the court act with ref-

erence thereto in withdrawing it from the jury. However, no such injury has resulted, as said before, as would permit this court to reverse this case on account alone of the language used. Therefore the assignment is overruled.

We are of opinion that the appellant has had a fair and impartial trial, that the issues submitted to the jury for their consideration were such issues as should have been submitted, and were decisive of the case; that upon the verdict of the jury a judgment should have been entered as was entered by the court. As said before, this is the second appeal of the case, and really the issues had been decided heretofore, that is, the opinion of this court upon the matters had been ascertained, and its views were followed by the lower court in the trial of this case.

Finding no error in the action of the lower court such as should reverse the case, we are therefore of opinion that the same should be in all things affirmed. It is so ordered.