### LAUREL OIL CO. v. STOCKTON. *
(No. 7502.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 17, 1926. Rehearing Denied March 17, 1926.)

**1. Brokers ⊕⇒43(1)—Oral contract to pay money or to give interest in oil lease for services in securing it held not void as a whole, because agreement to give interest in lease is void, under statute of frauds.**

Oral contract to pay money or give interest in oil lease for services in securing it is not void as a whole, because agreement to give an interest in oil lease is void under statute of frauds, as giving an interest in land.

**2. Pleading ⊕⇒395—Party may not plead one cause of action and recover on another, but variance must mislead his adversary to his prejudice.**

Party may not plead one cause of action and prove and recover on another, though court has jurisdiction of and proof sustains it, but variance must be such as to mislead his adversary to his prejudice.

**3. Brokers ⊕⇒40—Contract to secure oil lease held based on a valuable consideration, where plaintiff secured lease at price agreed on, and defendant resold lease at profit.**

Contract to secure an oil lease with compensation for services to be difference, if any, between $50,000 and its price, to be taken in money or in interest in lease, was based on a valuable consideration, where plaintiff secured the lease at price agreed on, and defendant resold lease at a large profit.

**4. Brokers ⊕⇒80—Agreement of officer of company to share profits of plaintiff, agreeing to secure oil lease for company, does not affect plaintiff's right of recovery against company.**

Agreement of officer of oil company to share in profits of plaintiff, agreeing to secure oil lease for company, does not affect right of plaintiff to recover against company.

**5. Brokers ⊕⇒69—Oil company held not entitled to charge against compensation for services due one securing oil lease for them money which they voluntarily expended.**

One securing oil lease for oil company, with compensation for services being difference between $50,000 and the price, may not be charged with expense incurred by company; such payments being voluntary and no doctrine of subrogation applying.

**6. Evidence ⊕⇒158(4)—Mines and minerals ⊕⇒105(2)—Authority to act as president of oil company to make contract to secure oil lease may be shown by parol and circumstances connected with transaction (Vernon's Sayles' Ann. Civ. St. 1914, art. 1153).**

Authority to act as president and general manager of oil company to make contract to secure oil lease may be shown by parol and by facts and circumstances connected with transaction, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1153.

**7. Mines and minerals ⊕⇒105(2).**

Authority to act as president of oil corporation and to make contract to secure oil lease *held* sustained by evidence.

**8. Appeal and error ⊕⇒880(2).**

Error may not be predicated on refusal of requested issues relating to liability of parties dismissed and not appealing.

**9. Trial ⊕⇒351(4)—One failing to submit special issues to opposing counsel within reasonable time after charge was given may not complain of court's refusal to submit them.**

One failing to submit special issues to opposing counsel for examination and objection within reasonable time after charge was given may not complain of court's refusal to submit them.

**10. Appeal and error ⊕⇒207.**

Complaint on argument claimed improper is without merit, where no request was made at the time for its withdrawal from jury and to instruct jury not to consider it.

**11. Trial ⊕⇒118—Counsel's reading charge to jury and making suggestions as to proper answer from his standpoint held not improper.**

Counsel's reading charge of court to jury in discussion and making suggestions as to proper answers thereto from his standpoint *held* not improper, though counsel should not tell the jury the law.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Suit by T. Stockton against the Laurel Oil Company and others. From the judgment against the Laurel Oil Company, it appeals. Affirmed.

Gaines, Quin, Harley & Gaines, of San Antonio, for appellant.

Mann, Neel & Mann, Gordon Gibson, and John S. Morris, all of Laredo, for appellee.

COBBS, J. Appellee brought this suit against the appellant, Laurel Oil Company, a corporation, Herbert Keyser, and M. F. Buffum, to recover $20,000 upon a contract for services rendered by appellee to appellant in securing an oil lease upon certain land in Webb county, and in the alternative against Keyser and Buffum, officers of the corpora-

---

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction May 5, 1926.

tion, for that amount, but they were subsequently dismissed from the suit.

The appellant filed full exceptions, general denial, and special defenses, and further alleged that appellee at the time of making the contract was an officer of the company and any money earned by him or received by him under said contract was void, and, if not, inured to the benefit of his company. The case was tried before a jury upon special issues and judgment rendered upon their answers that appellee take nothing against Keyser and Buffum, but in favor of appellee against appellant, Laurel Oil Company, for $20,000.

Appellee makes vigorous protest to this court's considering appellant's brief, consisting of 45 assignments of error, which are set out in the back part of the brief, on the ground that none of said assignments refer to that portion of the motion for a new trial in which such error is complained of, nor is any reference given to the transcript so that such assignments or the motion for new trial can be found therein. Then in detail he takes up separately each assignment and presents the definite objection to each. Appellee treats the propositions in the same way. The objections are well taken to many, but we will consider the case on its merits upon proper propositions of law that control the disposition of this case as we see it.

We overrule appellant's first and second propositions, to the effect that plaintiff could not recover on the contract alleged by him, because the proof offered did not sustain the contract alleged. The first ground in the contract sued on was that plaintiff should procure a mineral lease on the usual conditions wherever the lease was a special contract to carry special terms and conditions. The second ground alleged he was to receive commissions in the form of an interest in the lease, while the proof offered showed he was entitled only to cash.

Turning to the pleading leading up to the contract sued on, it will be seen that it was alleged that up to the 1st day of May, 1924, appellant had a lease upon 40 acres of land in Webb county producing oil, and on that day a judgment was rendered by the district court of Travis county in a suit by the state divesting title out of appellant and vesting same in the state.

The lease was awarded by the state to Thaxton & Anderson. Appellant, being desirous to secure an oil lease conveying to it seven-eighths of the said oil and gas rights, to avoid and obviate the risk of the total loss of said valuable property and oil wells in the event that an appeal from such judgment be unavailing, employed appellee, then its bookkeeper, to secure an oil and gas lease from the new owners, and 'agreed to pay him additional compensation. In his petition the plaintiff alleged:

"That the defendant Laurel Oil Company, acting by and through its president and chief executive officer, defendant Keyser, who was and is authorized to act for it, and who then acted with the consent and approval of defendant Buffum, also a director of defendant corporation and its only other active officer, represented to plaintiff that an oil lease in the usual form and on the usual terms covering the 40 acres herein described and executed by said Thaxton & Anderson, conveying their rights therein when perfected, was of the value of $50,000 to said corporate defendant, and said Laurel Oil Company employed plaintiff to secure such oil lease from said Thaxton & Anderson and contracted and agreed to pay him for such services the sum of $50,000, less the amount paid for such oil lease if and when acquired by or for the corporate defendant or to convey to plaintiff an equivalent interest in said oil lease; that is to say, that if, through plaintiff's efforts, said lease was secured for a lesser sum than $50,000, then the Laurel Oil Company would pay to plaintiff the difference between such lesser sum and $50,000 or would convey to him a proportionate interest in said lease.

"That plaintiff thereupon accepted such offer in its terms as made by the corporate defendant and by its named officers in its behalf and undertook such additional employment, with the express understanding and agreement that his contingent compensation or commission in the event of a successful outcome of his efforts was to be the amount by which the actual payment for such rights in said 40 acres was less than the sum of $50,000, which was to be paid to him if and when such rights, in fact, were acquired by the corporate defendant or a corresponding interest in such lease and rights.

"That plaintiff thereupon and on or about the 4th day of May, 1924, proceeded to the city of Austin and there employed, and secured the assistance of, various agents and attorneys to assist him in procuring said lease and taking the necessary steps to procure the same from said Thaxton & Anderson, to wit, John W. Gaines, attorney at law, John T. Smith, C. L. Greenwood, and John Tyler, and with said agents and attorneys entered actively upon the performance of his obligations under said contract and negotiations with said Thaxton & Anderson and others to procure the sale by them of an oil lease upon said 40 acres and the perfection of the title in them in order that such lease might be made validly by them.

"That, always acting in pursuance of said contract, the defendant, personally and acting by and through his (plaintiff's) said agents, servants, employees, and attorneys, to wit, John W. Gaines, attorney at law, of San Antonio, Tex., and C. L. Greenwood, John T. Smith, and John Tyler of Austin, Tex., on or about the 1st day of June, 1924, secured an offer and agreement from said Thaxton & Anderson to sell and convey to the defendants an oil and gas lease on the 40 acres above described for and in consideration of the sum of $30,000, which offer was accepted by the defendant Laurel Oil Company.

"That thereafter and on or about the 11th day of June, 1924, the commissioner of the general land office awarded said 40 acres of land, and other land, to said Thaxton & Anderson on their field notes and application to purchase, and they thereupon sold, assigned, and transferred to the defendant corporation, in

consideration of the sum of $30,000, an oil and gas lease thereon on terms satisfactory to it and in accordance with its contract with plaintiff."

[1] Upon the objection made to the court that that part of the oral contract which provided in the alternative for the sale of or interest in the lease, the lease being real estate, was in violation of the statute of frauds, the court sustained it and dismissed Keyser and Buffum from the case without objection from any one, and proceeded on the other theory for the recovery of money only between appellant and appellee. The appellant objected that, the contract being oral, it was void as a whole, but, if not, it was indivisible, and still void as a whole. We overrule these contentions. Jones v. Gammel (Tex. Civ. App.) 94 S. W. 191.

[2] It is not necessary to set out the testimony pro and con. There was sufficient testimony to support the finding of the jury that the contract was made as set out. The proof and the pleadings correspond. The rule invoked by appellant is an ancient one, and as old as the common law itself. The modern reason differs vitally from the reason of its original enforcement, which was a rule relating to the jurisdiction of each particular case by virtue of the writ issued out of chancery, having no jurisdiction to try any other or different matter. The present rule, simple in itself, is that a party will not be permitted to call another into court to defend one cause and then prove and recover on another and different cause, though the court may have jurisdiction of and the proof may sustain such other cause. It has a definite, fixed, and salutary purpose, which is to prevent the opposite party from being misled and surprised at the trial. The variance must be such as to mislead the adversary party to his prejudice. 21 R. C. L. 611; McDonald v. Cabiness, 102 S. W. 721, 100 Tex. 615.

[3] The contract was based on a valuable consideration, and was authorized by the corporation. Appellee secured the lease for the appellant at the price and for the consideration agreed upon. The appellant received the lease, which it thereafter sold for an increased consideration of $122,500, making a very large profit, and it comes with very poor grace under the circumstances to deny the contract and the want of authority of appellee, and then, too, after receiving the very great benefits of the splendid trade he made for appellant.

[4] There was no consideration for the alleged interest of Keyser to share in appellee's profits. If there was such a promise, it was induced by force and coercion after appellee's contract had been made, and that is true, too, with reference to any of the others. However that may be, such agreements are independent matters to any controversy between appellant and appellee, and can in no way affect appellee's right to enforce his contract against appellant in this suit, even though such parties, officers of the company, may have had an interest in appellee's contract. We overrule the sixth and seventh propositions of appellant.

[5] The contract was that appellee was to receive for his services the sum of $50,000 less the amount that was actually paid for the lease, which cost $30,000. Appellee was not to bear any other expense. It was shown at the time the contract was made neither Buffum nor Keyser, officers of appellant, thought there would be any profit. They both believed that the lease could not be bought for less than $80,000. There is no merit in the contention that appellee was to be charged with other amounts alleged to have been paid by appellant in securing the lease, which also included an item of attorney's fees paid John W. Gaines, the attorney, in excess of $9,000. The agreement was that appellee was to continue in his position, with the added contract as an incentive to secure the lease. It must be remembered that with the loss of the lease at the suit of the state appellant lost a very valuable oil-producing lease. In viewing their desperate situation at that critical time, they realized that the officers and directors were strangers in Texas, unfamiliar with Texas laws and ways, and unacquainted with the officials administering the public lands of the state, and almost helpless, and they very naturally turned to appellee, whom they knew had wide experience in banking and legal circles and in land matters, for assistance. He was on friendly terms with the officials with whom the company had to deal, and familiar with all the facts, and, naturally, was also personally interested in the matter and was a suitable person to give this matter special attention. It was worth the effort, though they did not have much faith in the venture. They thought the lease really worth $250,000 and that it could not be purchased at a satisfactory price. From the view the jury took of it on the facts, none of the alleged charges as expenses in procuring the lease should be taken from appellee's recovery, and in this view we concur. They are not proper charges in this case. Such payments, if any, were voluntary on the part of appellant, and no doctrine of subrogation can be applied here.

[6, 7] The authority of Keyser to act as president and general manager to make the contract could be shown by parol, and by facts and circumstances connected with the transaction, and we overrule all of appellant's contentions on that point. Keyser himself stated:

"I have been acting as president and general manager ever since. I have been taking all necessary steps in looking after the business of the company. The board of directors never did question anything I did or reverse it. They have confidence in me and regard what I do as for the best interest of the company, and I think they have supported me in everything I

have done so far. The stockholders and directors out there regard me as the proper man to head the company."

And that—

"When I purchased the oil rights from Thaxton & Anderson, that transaction was absolutely satisfactory to the directors."

Aside from all the facts and circumstances stated, the letter introduced in evidence, to which appellant has assigned error, which we overrule, shows Keyser's authority. Vernon's Sayles' Ann. Civ. St. 1914, art. 1153; Canadian Long Distance Telephone Co. v. Seiber et al. (Tex. Civ. App.) 159 S. W. 897; Hamm v. Drew, 18 S. W. 434, 83 Tex. 77; Texas Standard Cotton Oil Co. v. National Cotton Oil Co. (Tex. Civ. App.) 40 S. W. 159; Cuero Packing Co. v. Alamo Mfg. Co. (Tex. Civ. App.) 194 S. W. 492; Booker-Jones Oil Co. v. Refining Co., 131 S. W. 623, 132 S. W. 816, 63 Tex. Civ. App. 142.

The letter was dated April 21, 1924. It is very full and complete in giving the necessary authority, and is signed by the directors, who are authorized to make such contracts. The letter was also approved by a special meeting of the board, if such additional authority should be deemed necessary. The by-laws of the appellant provided:

"The corporation may conduct business in the state of Delaware and elsewhere—including any of the states of the United States—and have one or more offices therein.

"The company may have an office in the city of Mirando, Tex., and also offices at such other places as the board of directors may appoint."

The by-laws as to meetings, notice, etc., are liberal in the extreme. By-law 21 provides that a majority shall constitute a quorum. There were only five directors so three constitute a quorum. By-law 22 provides for special meetings to be called by the president, or on request of three directors, on one day's notice. By-law 23 provides that the directors may meet "at such places as they may from time to time designate." By-law 50 provides that notice may be given by mail and is given when notice is mailed. These are wide and generous powers and practically authorize the directors to meet when and where they choose on one day's notice at the request of three of them.

[8] In so far as special issues 9, 10, 11, and 12, requested to be given and refused, relate to the liability of Keyser and Buffum, they were dismissed from the case and did not appeal and no error can be predicated thereon.

Appellant's proposition No. 12, and subproposition 12, in so far as they question the sufficiency of the pleading and proof to support the verdict of the jury, or the forms of the issues submitted, are without merit.

[9] Issues 7 and 8 as to the acceptance of the benefit of Stockton's work by the company with notice are warranted by the ratification plea. The subpropositions that complain of special issues Nos. 9, 10, 11, and 12, are without merit. These issues relate in no way to the liability of appellant, but were based on the alternative count in plaintiff's petition by which he sought to hold Keyser and Buffum personally, if the corporation itself was not bound. The corporation being the primary defendant, and verdict and judgment going against it, the answers to the issues were of no moment. These issues were warranted, in fact demanded, by the pleadings and proof, but they formed and could form no basis for a judgment against the company. Nothing now at stake depends upon them. They relate to the liability of Keyser and Buffum, both discharged and neither appealing. Besides appellant is not in a position to complain at the refusal of the court to submit the special issues, since it failed to submit them to opposing counsel for examination and objection within a reasonable time after the charge was given to the parties or their attorneys for examination.

[10] There is no merit in the eighteenth proposition, complaining of the alleged improper argument, if it was improper, which under the circumstances we do not think it was, as no request was made at the time for its withdrawal from the jury and to instruct the jury not to consider it. Baldwin v. Drew (Tex. Civ. App.) 195 S. W. 636.

[11] And this applies to the nineteenth and twentieth propositions. There was no impropriety in appellee's counsel reading the court's charge to the jury in the discussion and making suggestions as to proper answers thereto from his standpoint. But in such comments counsel should not, of course, indicate to the jury or tell them the law applicable. The jury must take the law of the case alone from the court.

The argument of counsel, in his address to the jury, complained of, was in direct reply to the challenge of appellant. Why had he not produced certain evidence for him to say in reply thereto that it was present to offer, but was "shut out on objection of the defendant"? Sims v. Ford (Tex. Civ. App.) 209 S. W. 699; Baldwin v. Drew (Tex. Civ. App.) 195 S. W. 636.

We have very carefully gone over all the assignments and propositions. We think the case has been very fairly tried and substantial justice administered.

There being no errors assigned necessitating a reversal, the assignments and propositions are all overruled, and the judgment is affirmed.