## SOUTHERN MOTOR LINES v. CREAMER.

### No. 3244.

Court of Civil Appeals of Texas. Beaumont.

Feb. 18, 1938.

Rehearing Denied Feb. 23, 1938.

Battaile, Burr & Holliday, of Houston, for plaintiff in error.

Barnes & Barnes, of Beaumont, for defendant in error.

WALKER, Chief Justice.

On the morning of October 24, 1936, just after midnight, Ben Alton Creamer, son of appellee, Mrs. Susie Mae Creamer, was killed in a collision between an automobile in which he was riding and a truck. The automobile was being driven by W. H. Agee, Jr., and the truck, owned and operated by appellant, E. G. Smith, was being driven by one of his servants in the due course of his business. The collision occurred in the business section of the city of Beaumont, at the intersection of College street, running east and west, and Park street, running north and south. The truck was traveling east and the automobile south. This suit was by appellee, a widow, against appellant, who operated a line of trucks under the name of Southern Motor Lines, for damages suffered by her by reason of the death of her son. The jury found that $5,000, "paid now," would compensate her for the contributions she was deprived of by her son's death. In support of this finding, the jury found the following facts, and that each finding constituted negligence and a proximate cause of the death of Ben Alton Creamer—all these findings had support in appellee's pleadings: At the time and place of the collision (a) appellant's truck was being driven at a rate of speed of 35 miles per hour (b) and in excess of 20 miles per hour; (c) the truck driver failed to keep a proper lookout (d) and failed to keep the truck under control; (e) and in approaching the Park street intersection failed to sound ,a warning (f) and failed to slow down as he approached the intersection (g) and failed properly to apply his brakes. The jury also found against appellant on all issues of "sole proximate cause" submitted against W. H. Agee, Jr., the driver of the automobile, and of contributory negligence against Ben Alton Creamer. On the verdict, judgment was entered in favor of appellee against appellant for $5,000, interest and costs. Appellant duly prosecuted his appeal to this court.

We overrule appellant's contention that the issues of negligence and proximate cause submitted to the jury were not raised by the evidence, and that the answers of the jury to the issues were without support in the evidence, and were so against the weight and preponderance of the evidence as to be clearly wrong. W. H. Agee, Jr., the driver of the automobile, testified that he stopped his automobile at the "stop sign" on Park street, near the College street line; that before entering the intersection he looked to his right and left, and saw nothing "to disturb him"; that he entered the intersection, and began to drive his automobile across the intersection at a rate of speed of 7 or 10 miles per hour; that he looked to the right after entering the intersection, and saw the lights of the truck 30 or 60 feet away; that the truck was approaching him at a speed of 35 or 40 miles per hour; that he turned his automobile to his left, and the truck turned to the right and struck his automobile on the right-hand side. Appellant's witness, E. A. Labaume, corroborated Agee on the rate of speed of the truck. The truck came to a stop after passing the intersection, and the driver was thrown under the truck. The truck, with its trailer, was at least 32 feet long and weighed about 13,000 pounds, and was loaded with more than 9,000 pounds of freight. The accident occurred in the business section of the city of Beaumont. On appellant's testimony, if the truck was being driven at 35 miles per hour, the driver could have stopped it in the distance of "about 75 or 100 feet." The testimony also raised the issue that, had the truck been driven at a more reasonable rate of speed, Agee would have ·driven in safety across the intersection. The findings on the rate of speed, negligence, and proxi-

mate cause support the verdict; so we pretermit a discussion of the other issues of negligence submitted to the jury, though all of them have support in the evidence.

■ Among the many charges requested by appellant, and refused by the court, were the following:

"Defendant's Special Issue No. 3:

"Do you find from a preponderance of the evidence that the driver of the Chevrolet car in question failed to yield the right of way to defendant's truck, which was then and there approaching the intersection of Park and College Streets?"

"Defendant's Special Issue No. 4:

"If in answer to the foregoing special issue you answered we do then answer the following special issue:

"Was such failure the sole proximate cause of the collision which brought about the death of B. A. Creamer?"

When these charges were presented to the trial court by appellant's counsel, the following proceedings were had. Mr. J. Austin Barnes, counsel for appellee, asked Mr. John Battaile, counsel for appellant, the following question: "John, have you made any changes or alterations in your requested issues, or are those which you are now requesting and filing with the clerk of the court identically the same as those which you furnished to me last night?"

Mr. John Battaile, counsel for appellant, immediately replied: "No, Austin, we have not made a single change in any way and manner."

Mr. Barnes replied: "Upon your statement that there is no change, I will not take the time of the court to read all those requested issues again, but will rely upon your statement that they are the same."

Though Mr. Battaile had no intention of deceiving Mr. Barnes, and made his reply in the utmost good faith, his statement to Mr. Barnes was not true. Special issue No. 4, as requested by appellant, had not been submitted to Mr. Barnes, and he did not know that it had been submitted to the court until after the jury retired to consider its verdict. Question No. 3 had been submitted to him, and the court had refused its submission, because, without issue No. 4, it was merely evidentiary and the answer of the jury to question No. 3 could have had no effect on the judgment. When appellant added

issue No. 4, an entirely different proposition was raised; and Mr. Barnes testified that, had he known that issue No. 4 was included among the requested issues, he would have advised the court to submit issues Nos. 3 and 4. This court gives great weight to this statement by Mr. Barnes, knowing, from his long experience at our bar, that he realized the importance of this issue. Because Mr. Barnes was not given an opportunity to inspect issue No. 4, the court did not err in refusing to submit it, and, under the circumstances, appellant is estopped to assert error against the refusal of the court to submit it. Laurel Oil Co. v. Stockton, Tex.Civ.App., 281 S.W. 1106; Panhandle Ry. Co. v. Burt, Tex.Civ.App., 71 S.W.2d 390; Velasquez v. International Railway Co., Tex.Civ.App., 36 S.W.2d 1070.

■ The court, after defining "proximate cause," gave in charge to the jury the following definition of "sole proximate cause": "In this connection and in connection with all issues asking about 'sole proximate cause', you are instructed that 'sole proximate cause' means the only proximate cause; and you are further instructed that there can be only one 'sole proximate cause' in this case."

To this charge appellant reserved the following exceptions: "Defendant objects to the explanatory matter given in connection with special issue No. 24, and subsequent issues, wherein the court instructs the jury that 'sole proximate cause means the only proximate cause; and you are further instructed that there can be only one sole proximate cause in this case', because said explanatory matter is in effect a general charge, which is highly improper in a case submitted upon special issues, and because the same is highly prejudicial to the defendant in that it advises the jury of the legal effect of their answers; and in effect deprives the defendant of an opportunity to have the jury pass on the issue relative to the deceased's negligence without reference to whether there can be one or more proximate causes; further because the term 'sole' proximate cause does not require a legal definition; the Court having heretofore defined proximate cause, and the word 'sole' being a plain, old Anglo-Saxon word, not ambiguous or vague, and having no particular legal significance, it is highly prejudicial to the defendant to have such instruction given the jury."

The charge is supported by the following proposition from the opinion of the Supreme Court in Southland Greyhound Lines v. Cotten, 126 Tex. 596, 91 S.W.2d 326, 329: "Upon another trial the defensive issues of sole proximate cause, that is, such of them as upon retrial find support in the evidence, should be submitted. Montrief & Montrief v. Bragg (Tex.Com. App.) 2 S.W.2d 276, and cases there cited. * * * The jury should be instructed in connection with the issues of sole proximate cause that there can be only one sole proximate cause of an event."

Sproles v. Rosen, 126 Tex. 51, 84 S.W. 2d 1001, cited by appellant to support the exceptions, in our judgment supports the court's charge.

■ The court gave in charge the following definition of "proper lookout": "By 'proper lookout' is meant that lookout which an ordinary person engaged in the same or similar manner as the person in question, under the same or similar circumstances, would keep."

To this charge the appellant reserved the following exceptions: "Defendant objects to the court's definition of 'proper lookout' because the same is highly confusing, misleading and erroneous in that it gives the jury no instruction whatever as to the degree of care required to keep a proper lookout, and does not instruct the jury as to what degree of care a person would have to use in order to keep a proper lookout and thus permits the jury to set up their own standard of what constitutes a proper lookout and the degree of care necessary therefor, and to render a verdict thereon to the prejudice of this defendant."

In support of this exception appellant submits the following proposition: "The charge in the case at bar embodies no standard of care whatever. The degree of care which would be exercised by an 'ordinary' person is not the standard in our jurisprudence. The standard is the degree of care that would be exercised by a 'person of ordinary prudence' under the same or similar circumstances."

The charge has support in Psimenos v. Huntley, Tex.Civ.App., 47 S.W.2d 622, 624, where it is said: "A proper lookout in such cases is therefore such as would be kept under the circumstances existing at the time by a person of ordinary care and prudence in entering and crossing such street to discover the approach of vehicles in time to avoid being struck thereby."

■ Appellant assigns error against the refusal of the court to grant him a new trial on the ground of newly discovered evidence. The motion for new trial on this ground rested upon the affidavit of one of appellant's counsel, to the effect that he had discovered two witnesses who would swear that, driving west, they passed the truck at a point about 100 feet from the intersection where the collision occurred, that the truck was traveling at a "slow and moderate rate of speed, not in excess of 20 miles per hour, and that within a few seconds they heard a crash and saw the truck in flames, and that they were less than a block away from the scene of the accident." Conceding diligence, the court was not in error for the following reasons: (a) The affidavit of counsel was not supported by the affidavit of the witnesses, they were not offered as witnesses on the hearing on the motion, and no testimony on this issue was offered on the hearing. On this statement the affidavit was mere hearsay, and the court did not abuse its discretion in refusing the motion, 31 Tex.Jur. 148; (b) the testimony related only to the speed of the truck immediately preceding the accident, and the other issues of negligence had support in the evidence and were sufficient to support the judgment; (c) the testimony of the new witnesses was merely cumulative. One of appellee's witnesses testified: "The truck might have been going less than 40 miles per hour; well, it is possible, but not probable, to cause that amount of damage." Smith v. Great Atlantic & Pacific Tea Co., Tex. Civ.App., 100 S.W.2d 1041, 1043.

The judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.